BARTLEY v. METROPOLITAN STREET RAILWAY COMPANY, Appellant.

Division One, February 15, 1899.

1. **Negligence**: CABLE RAILROAD: SLACK OF ROPE: JERK. In order for a passenger to recover from a cable railroad for personal injuries alleged to be due to a fall from the running-board caused by the gripman's giving the car a sudden jerk, it is not enough to show that there was a jerk, but it must affirmatively appear that the jerk was an extraordinary or unusual one, or attributable to a defect in the track, an imperfection in the car or apparatus, or to a dangerous rate of speed, or to unskillful handling of the car by the gripman.

2. ———: ———: IMPUTED NEGLIGENCE: PRIMA FACIE CASE. It is only where the injury would not occur in the ordinary handling of cable cars, that negligence is imputed to the company. Where it affirmatively appears and is proved by common experience as well as by the laws of physics, that the particular thing complained of is unavoidable, there can be no imputed negligence. And unless in such case, plaintiff makes out a *prima facie* case, a demurrer to the evidence should be sustained.

3. ———: FAILURE OF PROOF: NEW TRIAL. Where the defendant has wholly exonerated itself from blame and overcome any possible presumption of negligence, and a verdict for the defendant is the only one that could have been allowed to stand, it is wholly immaterial whether or not the trial court erred in the declarations of law given to the jury, and a new trial should not be given even though the instructions were erroneous.

*Appeal from Jackson Circuit Court.*—Hon. C. L. Dobson, Judge.

Reversed and .remanded (*with directions*).

Karnes, Holmes & Krauthoff and Frank Hagerman for appellant.

(1) If, upon the pleadings and evidence, the plaintiff should not recover, then no error on the trial of the case can be ground for a new trial, and the order granting a new trial must be set aside and judgment entered for defendant upon the verdict. Homuth v. Railroad, 129 Mo. 642; Vogg v. Railroad, 138 Mo. 180. (2) There was no negligence on the part of defendant. When plaintiff in his petition specifies a particular act of negligence, he is confined thereto and can not recover on some other ground not specified. Waldhier v. Railroad, 71 Mo. 514; McManamee v. Railroad, 135 Mo. 440. This rule applies to passenger cases. Price v. Railroad, 72 Mo. 416; Bunyan v. Railroad, 127 Mo. 12; Hite v. Railroad, 130 Mo. 132; Ely v. Railroad, 77 Mo. 34; Leslie v. Railroad, 88 Mo. 50; Jacquins v. Railroad, 57 Mo. App. 320; Mayor v. Humphries, 1 Car. & P. 251. (3) There is no presumption that there was negligence in the particular specified, or, in this case, that there was negligence in any respect whatsoever. Before a presumption of negligence arises, there must be some proof of failure in the appliances or method of operation on the part of the carrier. Curtis v. Railroad, 18 N. Y. 534; Thomas v. Railroad, 23 Atl. Rep. 989; Feital v. Railroad, 109 Mass. 398; Buck v. Railroad, 10 N. Y. Sup. 107; Hawkins v. Railroad, 28 Pac. Rep. 1021. If a passenger is entering or leaving a car, or standing in such position thereon in circumstances imposing the exercise of care on his part, he is not, in case of injury, entitled to rely upon the presumption of negligence on the part of the carrier. Keller v. Railroad, 24 Atl. Rep. 159; Railroad v. McKinney,

124 Pa. St. 462; Farley v. Traction Co., 132 Pa. St. 58; Stager v. Ridge Av.Co., 119 Pa. St. 70; Railroad v. Chappell, 21 Fla. 175; Choate v. Railroad, 36 S. W. Rep. 247; Stewart v. Railroad, 146 Mass. 605. Accidents and mishaps which are consistent with the movements of trains and the ordinary operation of the road, create no presumption. Mitchell v. Railroad, 51 Mich. 236; Hayes v. Railroad, 97 N. Y. 259; Hite v. Railroad, 130 Mo. 132; Dressler v. Railroad, 47 N. E. Rep. 51; Etson v. Railroad, 68 N. W. Rep. 298; Baltimore, etc., Road v. Cason, 72 Md. 377. (4) Wherever, as shown by the testimony, the jolts and jerks received were such as are ordinarily incident to the movement of trains, these are risks which the passenger assumes. Hite v. Railroad, 130 Mo. 139; Choate v. Railroad, 36 S. W. Rep. 247; Stewart v. Railroad, 146 Mass. 605; Mitchell v. Railroad, 51 Mich. 236; Hayes v. Railroad, 97 N. Y. 259; 4 Elliott on Railroads, sec. 1589; Dressler v. Railroad, 47 N. E. Rep. 51; Etson v. Railroad, 68 N. W. Rep. 298; Baltimore, etc., Road v. Cason, 72 Md. 377. In this case there was no proof that the jar or jerking was unusual or other than such as was incident to the movement of the cable train.

W. J. HOLLIS for respondent.

(1) The court did not err in granting plaintiff's motion for a new trial. It had instructed upon the theory presented by defendant that the burden of proof rested upon plaintiff all through the trial. Hite v. Railroad, 130 Mo. 132; Dougherty v. Railroad, 81 Mo. 325; Dougherty v. Railroad, 97 Mo. 647; Hipsley v. Railroad, 88 Mo. 548; Clark v. Railroad, 127 Mo. 197. (2) The court erred in giving instructions numbered 2, 3, 4, 5 and 6. Och v. Railroad, 130 Mo. 27. The cause of this injury, as charged in the petition, was the sudden jerking or lurching of the car, attributed by plaintiff to the action of the gripman. Plaintiff must make a *prima facie* case to prove this jerking or lurching of the car, and the injury

as a result thereof. If he should happen to be mistaken in the cause of the violent jerk, this would not affect his *prima facie* case so made, but would devolve upon defendant to show it was not caused by any act of negligence on its part or on the part of its employees operating the same. Whilst plaintiff alleged it was caused by the gripman, it did not devolve on him to prove what caused it. When he showed it was such an unusual lurching or jerking that it broke his hold on the car and threw him off, his case was made. Dougherty v. Railroad, 97 Mo. 654. According to instruction 3, the burden never shifts, nor is the defendant liable for any careless or negligent jerking of the car unless the plaintiff proves it was caused by the gripman. This certainly relieves the defendant from exonerating itself and does away with the idea of a legal presumption ever arising in favor of a passenger.

MARSHALL, J.—Action to recover $25,000 damages for personal injuries.

The material allegations of the petition are, that defendant owns and operates a street railway in Kansas City, Missouri, which is operated "by means of an endless cable running under ground, driven by steam force, the cars attached to said cable by a device called a 'grip-iron' which may be tightened and loosened on said rope in such manner as to cause the cars to stop steadily or with a sudden jerk, in starting or while running, depending altogether upon the care used by defendant's servants in charge thereof, known as the gripman;" that on the 24th of December, 1893, about seven o'clock in the morning, plaintiff became a passenger on one of defendant's trains of cars, by boarding the same at the intersection of Twelfth and Jefferson streets, for the purpose of going to his place of business; that a great number of people patronize defendant's road in the morning hours, and although it was defendant's duty to furnish cars enough to reasonably accommodate the traveling public, the defendant "ran so few cars and at such long intervals, at the date aforesaid, that the cars

were so crowded that it was impossible for plaintiff to get a seat and defendant permitted plaintiff, with many other passengers, to ride on the running-board at the side of the car where he was compelled to stand and hold on to the posts of said car;" that it was defendant's duty, while its cars were so loaded, to so operate them in a reasonably careful and prudent manner as to prevent throwing its passengers off; that after plaintiff boarded said car and was standing and holding on to said posts, and had been seen by the gripman, the "said gripman so carelessly and negligently operated said grip-iron as to cause said car to jerk and lurch with such force that it broke the plaintiff's hold and threw him on the paved street with great force," injuring him so severely that his mind is affected and he is permanently disabled.

The defendant filed a verified answer setting up, 1st, a general denial; 2nd, a plea of contributory negligence; 3d, a release by plaintiff, in consideration of twenty dollars of all claims and demands arising out of the accident, and specifying that no attempt should be made by plaintiff to set aside the release, but if any such attempt should be made the plaintiff should deposit the twenty dollars with the clerk of the circuit court of Jackson county, as a condition precedent to any such attempt to set aside the release, and that no tender or offer to return the twenty dollars was ever made by plaintiff.

The unverified reply of plaintiff denied, 1st, that the release was the release of the plaintiff because at the date of it plaintiff "had just come out of the hospital, was yet ailing and had not recovered from his injuries and was unfit to be talked to on any matter of business on account of his injuries and the effect it had on his mind, and that he was mentally incapacitated from contracting," and therefore "he is not bound by said release;" 2d, that defendant sent two of its special agents to plaintiff who told him the defendant had sent him twenty dollars "to pay on his hospital dues and asked that he sign a receipt for the same, stating at the same time that

the company would settle with him for his injury as soon as he was able to be about. Plaintiff at this time was, on account of his injury, unable to read or do business of any kind, when said agent did then and there falsely and fraudulently read to plaintiff what pretended to be a simple receipt for twenty dollars, and did thereby obtain the signature of plaintiff to the pretended release by so falsely reading the same and inducing plaintiff to believe he was only signing and executing a simple receipt for twenty dollars, when in truth and in fact they were at the time falsely and fraudulently obtaining his signature to the pretended release," and therefore he says the release or contract is not his and he is not bound by it.

At the beginning of the trial the defendant objected to the admission of any evidence on the ground that the defendant was entitled to a judgment because the reply is a departure from the petition, because the matters set up in the reply can not be set up by way of reply, because the matters set up in the reply are not cognizable at law, and because such matters constitute no reason for avoiding the release. The court overruled the objection and the defendant excepted.

Plaintiff's version of the accident is that about seven o'clock on Sunday morning, December 24th, 1893, at Twelfth and Jefferson streets, in Kansas City, he boarded the grip-car of one of defendant's trains of cable cars, for the purpose of going to the saloon at number 1519 Bell street, where he worked; that he got on the running-board or foot-board, as it is convertibly designated, of the grip-car, at about the center of the car; that the car was full, except the first or second double seat from the front of the car, which was occupied only by John Watkins, a friend of his; that he stood on the running-board and held onto one of the posts or uprights, intending to so stand until he reached his destination, and made no effort to go forward and take a seat on the double seat where his friend Watkins was; that the car had nearly stopped when he

got on the car, and after he got on the car stopped completely; that he did not know whether the trailer, which was a closed car, was full or not; that the car was started again and had gone about thirty or forty feet and had attained the full speed of the cable rope, when "it kind of stopped, or something— gave a lurch; I don't quite understand how it was, but it gave a lurch, or something, the nature of which I don't under-stand;" that he didn't understand what caused it.    Ques. "Well, what did you notice on the part of the gripman, in the way of his doing anything, at the time of that jerk you speak of?" Ans. "Well, it was some action of his but what it was I can't say positively; he did something, but whether he was running faster than the speed of the rope or not I don't know, but I think he was; I know he caught the rope with a quick jerk, or made a motion with his grip like as if he was, and the jerk came right away, and that was the last I remember." The plaintiff's hold on the upright or post was loosened, he fell on the pavement, and was severely injured.    No one else on the car felt any unusual jerk or lurch.    George Price, a passen-ger, on the train, and a witness for plaintiff, who was seated on the side of the grip-car which the plaintiff boarded, and just behind the gripman, said that plaintiff got on the grip-car about where he was sitting; that there was a vacant seat just ahead of him and another just behind him; that plaintiff was going along on the running-board towards the vacant seat ahead of him, when he fell off; that the car had moved about half a block after plaintiff boarded it before he fell off.    Ques. "Yes, sir; what caused him to fall, if you know?" Ans. "Well, I don't know of anything unless it was a little kind of sharp jerk that the car gave." . . . . . . . Ques.    "I will get you to state if at the time of this jar or shock that you speak of, whether or not at that time you noticed the gripman to ob-serve what he was doing, whether or not he was jerking up or tightening upon his grip?"    Ans.    "No, sir; he was not jerking, but he had hold of the rod or grip."    Ques.    "What

caused the jerk, if you know?" Ans. "I don't know, sir."
Ques. "There was a jerk?" Ans. "Yes, sir; a jerk or jar."
Ques. "Was it very perceptible?" Ans. "No, sir; not
very, only there was a kind of a jerk" . . . . . . . Ques., on cross-
examination: "You have ridden on these cars, haven't you,
when the slack, what is called the slack in the rope, came and
went?" Ans. "Yes, sir." Ques. "Well, was it that—the
slack in the rope—that you struck at that particular time?"
Ans. "Yes, sir." Ques. "That was what caused the car to
give the lurch that it gave?" Ans. "I think so." Ques.
"There is no other way of accounting for it, from what you
say?" Ans. "That is what I thought it was." Ques. "Well,
do you say it was not the gripman jerking on the grip that
caused it?" Ans. "No, sir; I don't think that he did it."
Ques. "You did not see the gripman make any jerk, pull or
jerk on the lever that works the grip on the cable that would
account for this?" Ans. "I think not." Plaintiff had been
riding on defendant's cars nearly every morning and evening
for nearly two years previous to the accident, and knew how
cable cars were managed and run. There was much testimony
introduced by plaintiff concerning the release and his condi-
tion at the time he signed it—his version being that a day or
two after he got out of the hospital two representatives of the
defendant came to his house and brought him a check for
twenty dollars to pay the sisters at the hospital, and told him
not to talk about the case or to consult any one or to employ
any counsel until he was in a condition to talk to the repre-
sentatives of the company, and that he would be treated fairly.

Plaintiff read in evidence the following stipulation: "It
is admitted, for the purposes of this trial, that the cars in ques-
tion are operated by means of an endless steel wire cable rope,
in an underground conduit between the rails of the track
propelled by steam force from the power house; the cars are
attached to the cable rope by means of a device called the
'grip-iron,' running from the car down through the slotted

rail, at the end of which are jaws, or bars, which are opened or closed by the grip-lever, operated by the gripman; so that to move the car these jaws are closed so that they become fastened to the rope; and when the car is stopped, the jaws are loosened from the rope.   The cable rope is propelled at a regular rate of speed of about eight miles an hour as authorized by ordinance."

The defendant demurred to the evidence at the close of plaintiff's case, the court overruled the demurrer and the defendant excepted.

The defendant's version of the accident was as follows: G. W. Hartman, a passenger, who was seated on the grip-car in one of the single seats to the right of the gripman, testified that when plaintiff got on the grip-car he took the vacant seat just behind him; that almost immediately he rose, got out on the foot-board and started towards the front end of the car. Ques.  "Well, state how he fell off?"  Ans.  "Well, he seemed to try to catch the upright piece that was immediately in front of the seat in which I was sitting, and missed it, and fell off—just pitched right off."  Ques.  "What, if any, jerk or jar was there of the car, that you observed, or know anything about?"  Ans.  "There was none that I felt—I don't know of any."  Ques.  "You did not feel any?"  Ans.  "No, sir."   The witness further testified that the gripman did nothing, that he saw, that would cause the car to jerk; that there were vacant seats on the grip-car on the side which plaintiff boarded.

James Rowland, a passenger, seated on the trailer, testified that the car in which he was riding was not crowded, and that he noticed no jerk or jar or lurch when plaintiff fell off.

Edward Murphy, a passenger, seated on the trailer, gave similar testimony to Rowland's.

John Derry, a passenger, seated on the trailer, testified that plaintiff got on the running-board of the grip car and was moving toward the front of the grip when he fell off; that there was no jerk or jar or lurch; that the car was running

along as it usually does; that there were vacant seats, both in the trailer and on the grip-car—there not being more than fifteen persons on the train.

J. W. Watkins, seated in one of the double seats of the grip-car, opposite to the side on which plaintiff boarded the car, testified that plaintiff got on the running-board of the car, about the center of the car and walked along the foot-board or running-board towards the front of the car, and "he just fell off of the car and that was all there was to it;" that there was nothing unusual in the manner in which the car was run, no unusual motion or movement of the car; that there were vacant seats on both sides of the grip-car.

H. L. Mitchell, the conductor of the train, testified that plaintiff got on the running-board of the grip-car, then walked towards the front of the car and fell off; that there was nothing unusual in the motion of the car that caused him to fall off.

W. R. Wines, the gripman, testified that plaintiff got on the running-board of the grip-car and moved towards the front end of the car, and while doing so fell off; that the car was running at the full speed of the rope; that he did nothing to cause any jerk or lurch; that it was a very cold morning and he did not have hold of the lever as the iron is too cold to hold in one's hands in cold weather, that there were many vacant seats on both sides of the grip-car.

Defendant introduced the release in evidence, and also testimony as to the circumstances attending the execution of the release, and tending to contradict the testimony produced by plaintiff and to show that it was intended and understood by plaintiff to be a settlement and a release, and that the plaintiff was in a condition of mind to understand what he was doing and what it meant.

At the request of the plaintiff the court instructed the jury as follows:

1. If the jury believe from the evidence that plaintiff boarded the car of defendant for the purpose of being trans-

ported to the West Bottoms with the intention of paying the usual fare therefor, then he was a passenger of defendant, and it became its duty to give plaintiff a reasonable time to become seated before starting its car, or of starting the same with a reasonable degree of care, so as not to throw plaintiff off while he was in the act of getting a seat, or if there was no vacant seat it was the duty of defendant's servants to so reasonably run the train as to make it reasonably safe for him to ride and hold on where he was compelled to stand.   If you find from the evidence that plaintiff was in the act of getting to a seat, or that he was standing on the foot-board holding to the upright because he could get no seat, and you find that the car was carelessly started with a sudden jerk, or that after starting the train it was so carelessly operated that it caused a jerk or lurch, and that this was the cause of plaintiff's fall by jerking plaintiff's hand-hold loose and throwing him to the ground whereby he was injured without fault on his part, then he is entitled to recover, unless barred by the release pleaded in the answer of defendant.

2.   If the jury believe from the evidence that the mind of the plaintiff was so affected at the time he received the twenty dollars and signed the contract of release pleaded in the answer, that he did not understand the nature of the contract, and was by reason of such infirmity incapable of comprehending the business in which he was engaged, or if you believe from the evidence that the agents of defendant fraudulently misrepresented to the plaintiff the contents of the paper and by any artifice induced him to sign the release under the belief that he was signing some other instrument only for twenty dollars, in either event he is not barred from recovering in this case on account of said release so pleaded by defendant.

3.   The jury are instructed that the care required of the servants of defendant in the management and operation of the train in question at the time mentioned, was such care as

would be reasonably expected of very prudent persons in the management of the same or like business.

4. If the jury find for plaintiff, in estimating his damages they will take into consideration his physical suffering and mental anguish, if any, caused by the injury, also his present physical condition; if you find such condition the result of the injury, and if you believe from the evidence that the injury is permanent, you will consider his sufferings, both mental and physical, in the future, and allow him such damages as you believe he has sustained as a direct result of the injury complained of—not exceeding twenty-five thousand dollars.

5. The court instructs the jury that they are the sole judges of the weight of evidence, as well as the credibility of the witnesses, and in determining the weight of evidence the jury are not bound solely by the number of witnesses testifying to any fact, but they may consider their situation with relation to the facts they have testified about, their likelihood under all the circumstances in evidence surrounding them of knowing the facts they have testified about, as well as the reasonableness of its truth, taken together with all the other facts and circumstances in evidence surrounding the whole case, and if you believe from the evidence that any witness has willfully sworn falsely to any material fact in issue, you are at liberty to disregard the whole testimony of such witness.

6. If you find the other issues submitted to you in favor of the plaintiff, and you believe from the evidence that the $20 paid to him was to pay his hospital bill, then it is not necessary that the same be deposited with the clerk of this court, but should be deducted from any amount, if any, you find plaintiff entitled to recover.

The plaintiff asked and the court refused to instruct the jury as follows:

7. The care required of plaintiff in this case was such as would be required of reasonably prudent persons under like

or similar circumstances. If his conduct at the time and prior to the injury was such conduct as might be reasonably expected of a reasonably prudent person under like or similar circumstances, then he was not guilty of contributory negligence which will bar his recovery.

At the request of the defendant the court instructed the jury as follows:

1.  If the plaintiff was, at the time he signed the release offered in evidence, capable of knowing what he signed, and what was written therein, and did so know, then the settlement in this particular case is absolutely binding, and plaintiff can not get rid of the release upon this trial. In determining this question as to the release, you have no right to go into the question of whether plaintiff ought or ought not to have received more. If plaintiff knew, and had sufficient capability and comprehension at the time to know what he was signing, then he is bound by the contract, and you must find a verdict for the defendant. And in the event that you find he is so bound, then it is wholly immaterial for you to consider any other question in the case.

2.  In this case, the mere fact, if it be true, that plaintiff fell from a car and was injured, gives him no right to sue defendant and recover damages. Before, under any circumstances, the plaintiff is entitled to a verdict, the jury must find that his injury was actually caused by the negligence of the defendant in the manner he has specified it in his petition, and which is by the instructions submitted to your consideration. If his injuries were not actually caused by such specified negligence, then he has no case and can not recover, even if he did fall from the train and was injured thereby, and even if the fall was caused by a jerk of the car. But even if he was injured by such negligence, still he can not recover if plaintiff, by his own act or conduct, negligently contributed to his own injury, nor can he recover if you find for defendant upon the issues as to the release referred to in other instructions.

3.  The plaintiff specified in his petition two things as constituting the alleged negligence of the defendant, and in considering the question whether defendant was negligent you must be confined to the things so specified.  The acts so specified are, first, that defendant negligently permitted the train to become overcrowded, so that plaintiff could not obtain a seat and he was thereby compelled to stand upon the foot-board; and, second, that defendant's gripman negligently caused the car to be jerked so as to throw plaintiff off.  If the jury find that the train was not so crowded but that the plaintiff could have obtained a seat in one of the cars if he had wanted to, then the first act of negligence so charged by the plaintiff must not be considered.  And unless you further find that plaintiff's fall was caused by negligence of the grip-man in running the car with a jerk, then, without more, your verdict must be for the defendant, even though you may believe that plaintiff was thrown to the ground by a jerk of the car.  A jerk of the car, if not negligently made by the grip-man, gives the plaintiff no right to recover.

4.  Even if the car was going at the full speed of the cable rope, and even if there were jerks and jars which caused the plaintiff to fall, still if such jars and jerks were only such as were necessarily incident to the proper and careful operation of the cable road, in its usual and ordinary way, then there was no negligence, and defendant is not liable.

5.  Even if you should find that the defendant's grip-man was negligent in the manner specified, still plaintiff can not recover if he was negligent, and thereby contributed to his own injury.  There is a difference between a plaintiff's and a defendant's negligence in relation to its connection to an injury.  The difference is this:  Defendant's negligence, if any, must be the cause of the injury; whereas plaintiff's negligence, if any, need not be the cause of the injury, for it defeats a recovery if it but contributes to the injury.  And even though defendant's negligence, if any, or anything else,

were the cause of the injury, still if contributing thereto, there was negligence on plaintiff's part, the verdict must be for the defendant. Or if both parties were negligent and thereby contributed to the injury, then plaintiff has no case.

6. Plaintiff was bound to exercise reasonable prudence in looking out for himself and in finding a safe place on the train. If he failed to do so, then he was negligent. Forgetfulness, inattention, or any failure to exercise ordinary care upon plaintiff's part was negligence, and if by the exercise of ordinary care upon his part he would not have fallen from the car, then he has no case, even though you may believe that the defendant's gripman was also negligent, and even though you may believe that he was thrown from the car by a jerk.

There was a verdict for defendant, which upon motion of plaintiff the court afterwards set aside and granted a new trial, "for the reason that the court committed error in giving and refusing to give instructions to the jury on the trial of this cause." The defendant excepted to the action of the court and appealed the case to this court.

I.

The order granting the new trial is in general terms, "for the reason that the court committed error in giving and refusing to give instructions to the jury on the trial of this cause." This is a compliance with the letter, but not the spirit or reason of section 2241, R. S. 1889. No index is thereby afforded to the error the court believed it had committed. Respondent's explanation, however, is, that the instructions given for defendant placed the burden of proof upon the plaintiff throughout the whole case, and it is claimed that this is a proper case for the application of the doctrine of imputable negligence to the defendant, and hence the plaintiff's case, having been made out by showing the accident and the injury, the presumption of negligence attached, and the

burden was cast upon defendant to exonerate itself by disproving negligence on its part. If this was the moving cause of the action of the court it was clearly erroneous, and if this was not the ground of its action, we are at a loss to understand the reason.

The only negligence charged in the petition is that the gripman, "so carelessly and negligently operated said grip-iron as to cause said car to jerk and lurch with such force that it broke the plaintiff's hold and threw him on the paved street with great force." This is a specific charge of a particular act, on the part of the gripman, which was susceptible of positive and direct proof, and excludes any idea of intention of the pleader to rely upon general negligence, but on the contrary expressly limits the plaintiff to proof of the specific negligence averred. [Waldhier v. Railroad, 71 Mo. 514; Ely v. Railroad, 77 Mo. 34; Leslie v. Railroad, 88 Mo. 50; Hite v. Railroad, 130 Mo. 132; McManamee v. Railroad, 135 Mo. 440.]

To sustain his allegation of negligence plaintiff testified that he boarded the grip-car, stood on the running-board (although there was at least one vacant seat beside his friend, Watkins, on the car), intending to ride to his destination, the while standing on the running-board; that the car came to a full stop just after he had gotten on it, then started, had attained the full speed of the cable rope and had gone thirty or forty feet (other witnesses say half a block) when "it" (the car) "kind of stopped, or something—gave a lurch; I don't quite understand how it was, but it gave a lurch, or something, the nature of which I don't understand;" that it was some action of the gripman that caused the jerk, but he could not say positively what it was, whether it was running faster than the speed of the rope or not, he did not know, but that "he" (the gripman) "caught the rope with a quick jerk or made a motion with his grip like as if he was."

The only other witness for plaintiff who explained the accident was George Price, who was a passenger on the grip-car,

who said plaintiff got on the car, about the center thereof; that there was a vacant seat behind the witness and one ahead of him but plaintiff was walking along the running-board towards a vacant seat near the front of the car when he fell off; that the car had moved about a half a block after plaintiff boarded it before he fell off; that he don't know what caused plaintiff to fall off unless it was "a little kind of a sharp jerk;" that the gripman did nothing to make the car jerk, and was not jerking up or tightening upon his grip; that the jerk was not very perceptible; that it was the slack in the rope which caused the jerk, and that there was no other way of accounting for the jerk.

This was practically all the evidence adduced by the plaintiff to sustain the issue of carelessness and negligence on the part of the gripman in operating the car. To state it is all that is necessary to conclusively demonstrate that the plaintiff utterly failed to make out a *prima facie* case such as entitled him to go to the jury. Plaintiff's testimony does not rise to the dignity of proof of negligence, for it fails to show what the gripman did, or how he caused the jerk, or that he caused it at all; while the testimony of his witness, Price, is positive and direct that the gripman did not jerk or tighten the grip, but that the jerk, which was not very perceptible, was caused by the taking up of the slack in the rope. It is a matter of common knowledge, of which even a court is not ignorant, as well as a matter of physics, that the rope of a cable railroad can not be kept taut, and that the jerks, which are common and unavoidable to such roads, are caused by the slack in the rope being taken up. In order to recover from a cable railroad it is not enough to show that there was a jerk, but it must affirmatively appear that the jerk was an extraordinary or unusual one or attributable to a defect in the track, an imperfection in the car or apparatus, or to a dangerous rate of speed, or to unskillful handling of the car by the gripman. [Adams v. Railroad, 9 App. D. C. 26; Weaver

v. Railroad, 3 App. D. C. 436; Railroad v. Snashall, 3 App.
D. C. 420; Hayes v. Railroad, 97 N. Y. 259; Railroad v.
Stager, 119 Pa. St. 70; Mitchell v. Railroad, 51 Mich. 236;
Muller v. Railroad, 48 N. Y. Superior Ct. Rep. 546; Holland
v. Railroad, 155 Mass. 387; Stewart v. Railroad, 146 Mass.
605; Railroad v. Cason, 72 Md. 377.]

Clearly the testimony in this case does not show any-
thing extraordinary or unusual in the jerk; no defect in the
track or car or apparatus is shown and no negligence of the
gripman is made to appear.   It was therefore the duty of the
trial court to so declare, and to sustain the demurrer to the
evidence at the close of the plaintiff's case, and it was error on
its part not to do so.

## II.

This is practically conceded by respondent in this court,
but, to help out, he insists that negligence should be imputed
to defendant, and hence he was entitled to go to the jury,
although his testimony fell short of making out a *prima facie*
case.

This contention is not tenable.   It is not true that jerks
do not usually occur in the running of cable cars, but on the
contrary it is a fact that they are unavoidable.   It is only in
cases where the injury would not occur in the ordinary con-
duct of such affairs, that negligence is imputed to a defend-
ant.   Where, as here, it affirmatively appears and is proved
by common experience as well as by the laws of physics, that
the particular thing complained of is unavoidable, there can be
no negligence.

## III

The defendant's testimony established clearly that there
was no unusual jar or jerk or lurch; that the gripman was
wholly without fault; that plaintiff was walking along the
running-board towards the front of the car altho' there were

plenty of vacant seats, he might have safely taken; that while so walking he missed catching hold of one of the posts or uprights and fell off.

Even if this could be treated as a proper case for the application of the doctrine of imputable negligence, the defendant has completely exonerated itself from blame and has overcome any possible presumption of negligence and the verdict of the jury was the only verdict which they could have found consistent with the evidence, and the only verdict which could have been allowed to stand in the case, and therefore, under the many and uniform decisions of this court, it is wholly immaterial whether the trial court erred in the declarations of law given to the jury or not. [Fitzgerald v. Barker, 96 Mo. l. c. 666; Fox v. Windes, 127 Mo. l. c. 514; Homuth v. Street Ry., 129 Mo. l. c. 642.]

In the case last cited, ROBINSON, J., speaking for this court in banc, said: "While this is a suit at law, in which all the issues of fact triable are to be determined by the jury, when the facts as disclosed by the testimony of plaintiffs themselves, as in this case, entitled them to nothing, or when they admit the existence of the defense as set up by the defendant, the jury have no office to perform. And when the court delegates to the jury a work that it should have done, and in doing so it gave an erroneous instruction, and the jury proceed thereunder, and made a finding for the right party, as the court should have done without them, no error has been committed authorizing the granting of a new trial, 'notwithstanding the error in the instruction.' It is the settled doctrine of this court that if upon the pleadings and undisputed facts the judgment is for the right party, there can be no reversal no matter what errors intervened upon the trial. [Orth v. Dorschlein, 32 Mo. 336; Ellerbe v. Bank, 109 Mo. 445, and others.] Then upon the same principle, if the judgment is for the right party upon the undisputed or admitted facts in the trial court, that court should not disturb

the verdict and judgment thereon, notwithstanding error in instructions was made by it. [Kelly v. Railroad, 88 Mo. 534.]" Accordingly the judgment of the circuit court in awarding a new trial in that case was reversed, and the cause remanded with directions to enter judgment upon the verdict for defendant.

If that opinion had been written upon the facts and pleadings in this case it could not fit it better than it does.

The circuit court therefore committed error in granting a new trial in this case.

## IV.

The foregoing conclusions make it unnecessary to consider whether the circuit court erred in giving and refusing instructions, and also whether it erred in admitting evidence as to the release having been procured by fraud. It is enough now to say that the verdict of the jury was the only verdict that could properly have been rendered, and that the circuit court erred in granting a new trial. For this error the judgment will be reversed and the cause remanded to that court with directions to enter a judgment upon the verdict for the defendant. It is so ordered. All concur.