MARCH TERM, 1901. 637

Shields v. K. C. Sub. Belt. Ry. Co.

ANDREW W. SHIELDS, Respondent, v. KANSAS CITY SUBURBAN BELT RAILWAY, Appellant.

87   637
s100   517

### Kansas City Court of Appeals, March 4, 1901.

1. **Railroads: SIGNALS: EMPLOYEE.** Every railroad company should prescribe an intelligent system of signals to be used by employees engaged in handling its trains.

2. ———: ———: CUSTOM. A custom among railroad companies in regard to signals must be general, uniform, certain and notorious and known to the parties.

3. **Custom: EVIDENCE: USAGE: WITNESS.** The existence of a custom can not be shown by a single act but is the result of a series of simple acts creating in the mind of the witness a belief of the complex whole, that is, a custom is the result of usage and can only be shown by the proof of such usage.

4. ———: CUSTOM: EVIDENCE: SIGNALS. The evidence relating to the usage among railroads of giving certain signals is reviewed and held insufficient to show the existence of a custom to that effect.

5. **Negligence: MASTER AND SERVANT: RISK.** Where there is no duty on the part of the master there can be no negligence, and if injury in such case befalls the servant, it is but a risk of his employment.

6. **Railroads: FREIGHT TRAINS: JERKING.** Before a railroad becomes liable for a jerking caused by taking up of slack in a freight train, such jerking must be extraordinary and attributable to some defect in the appliances or want of skill in handling.

7. ———: SIGNALS: PLEADING: EVIDENCE. Pleading and evidence reviewed and held insufficient to send the case to the jury.

Appeal from Jackson Circuit Court.—*Hon. James Gibson,* Judge.

REVERSED AND REMANDED.

*Lathrop, Morrow, Fox & Moore* for appellant.

(1) The court erred in permitting plaintiff and his witness, R. J. Morton, to state their opinions and conclusions. Krueger v. Railroad, 84 Mo. App. 358; and authorities there cited; Rutledge v. Railroad, 110 Mo. 312, 321. (2) There was a variance between the allegations of the petition and the proof offered; the former counted on a duty to give plaintiff "information or warning" of the failure to uncouple the cars. In the evidence, however, the attempt is only to show the kind of stop signal that should have been made, and no evidence was offered to establish the negligence charged. Chitty v. Railroad, 148 Mo. 64, 74, 75; Hogan v. Railroad, 150 Mo. 36, 52; Rutledge v. Railroad, 110 Mo. 312, 318; Yarnell v. Railroad, 113 Mo. 570; Milling Co. v. Transit Co., 122 Mo. 258, 277; Mason v. Railroad, 75 Mo. App. 1, 10; Haynes v. Trenton, 108 Mo. 123, 131, 132, 133; Waldhier v. Railroad, 71 Mo. 514; Colliott v. Mfg. Co., 71 Mo. App. 163; Jacquin v. Cable Co., 57 Mo. App. 320, and cases cited therein. (3) The entire evidence showed that the foreman did what was customary and proper, i. e., signal to stop the train—the resulting jolting was incident thereto; plaintiff could have protected himself against this risk which he had assumed. McIntosh v. Railroad, 58 Mo. App. 281; Ring v. Railroad, 112 Mo. 220, 231; Jackson v. Railroad, 104 Mo. 448, 457; Williams v. Railroad, 119 Mo. 316, 322; Rutledge v. Railroad, 110 Mo. 312, 321; Towner v. Railroad, 52 Mo. App. 648; Moore v. Railroad, 146 Mo. 572. (4) That the stopping of freight trains is attended with more or less jarring or jolting due to taking up the slack is well known. It is certainly one of the risks assumed by railroad employees. Guffey v. Railroad, 53 Mo. App. 462, 469.

MARCH TERM, 1901. 639

Shields v. K. C. Sub. Belt. Ry. Co.

*Philip D. Clear* for respondent.

(1) The petition was sufficient before verdict. Foster v. Railroad, 115 Mo. 180. After verdict the petition was undoubtedly good and sufficient. Young v. Iron Co., 103 Mo. 324; Johnson v. Railroad, 96 Mo. 340; Hall v. Lane, 123 Mo. 636. (2) The expert testimony of plaintiff and his witnesses was competent and proper: First, because it was primarily competent and proper. Turner v. Haar, 114 Mo. 335; Goins v. Railroad, 47 Mo. App. 173; Czezenzka v. Railroad, 121 Mo. 201; Jackson v. Railroad, 118 Mo. 199. (3) Because the trial theory of the case was that the subject of injury called for expert testimony, the defendant's taking a much wider range than plaintiff's, and since said testimony was submitted to the jury on instructions given for defendant, complaint now can't be made of the admission of any such testimony. Baker v. Railroad, 122 Mo. 533; Berkson v. Railroad, 144 Mo. 211; Reardon v. Railroad, 114 Mo. 384; Francis v. Railroad Co., 127 Mo. 675; Hahn v. Dawson, 134 Mo. 591; Carlin v. Haynes, 74 Mo. App. 34; Guntley v. Staed, 77 Mo. App. 155; Christian v. Ins. Co., 143 Mo. 460; Sprague v. Sea, 152 Mo. 327, loc. cit. 338; Epperson v. Cable Co., 155 Mo. 346, loc. cit. 370. (4) The verdict is according to the facts and real law in the case, and hence should stand. State ex rel. Wright v. Adams, 76 Mo. 609; Hill v. Deaver, 7 Mo. 57; Pratt v. Cabanne, 12 Mo. 194; Boyce v. Smith, 16 Mo. 317; Fitzgerald v. Barker, 96 Mo. 664, 665; Bassett v. Glover, 31 Mo. App. 150.

SMITH, P. J.—This is an action by the plaintiff against the defendant to recover damages for personal injuries received by the former on account of the negligence of the latter. The negligence is alleged in the plaintiff's petition in this way:

"That plaintiff at the time of the happening of said grievances, and at all times mentioned herein, was under the exclusive orders, direction and control of his said foreman who was at all said times in charge of said switch crew for defendant and in charge of the switching of said train mentioned herein. That said foreman for defendant directed said switch crew that the car of said train, a boxcar furthest east and the next three west of it should be switched off on said sand track, and that the next car, the fifth one, should be switched off on the said lead track located just north of said sand track. That in order to switch said train of cars as above mentioned, said first four cars had to be uncoupled and cut off from the remainder of said switch train at some distance before the fifth car of said train would come to the switch leading on the said lead track, so that said fifth car could be uncoupled and run over said switch onto said lead track. That pursuant to the plan of switching said cars as above mentioned and pursuant to his said superior's directions, plaintiff mounted the car furthest east, on said train, said boxcar, for the purpose of riding it down, after said first four cars had been cut off and uncoupled from the rest of said train by defendant's said foreman, and for the purpose of stopping said cars, so as aforesaid uncoupled and cut off, when they came to the proper place on said sand track, as was plaintiff's duty to do.

"That plaintiff took his position on the top of said boxcar, at the hand brake on the east end of said car, ready to turn on the brake as soon as said foreman, pursuant to the said plan of uncoupling cars as above mentioned, had uncoupled said cars at said place in said train and had come out from between the cars into open space and signalled plaintiff that such uncoupling had been made or signalled plaintiff that he, said foreman, was unable to make said uncoupling. That while plaintiff was still at his said post of duty ready to turn

on said brake as above mentioned, said foreman attempted while said train was being pushed eastward, to make said uncoupling at said place in said train, to-wit: Between the fourth and fifth car from the east end of said train, and failed to make said uncoupling for the reasons hereinafter mentioned, and thereupon emerged from between the cars into open space where plaintiff could and did see him, and carelessly and negligently failed to give plaintiff any signal that he had failed to uncouple said cars at said place, and carelessly and negligently, without giving any signal or information of any kind to plaintiff that he had failed to make said uncoupling, signalled said engineer and fireman in charge of said engine to stop said train, on account of which said signal said train was stopped and plaintiff was by reason of such stopping thrown from said position of duty at said brake, over said car down on the track and run over by said train and doubled up under said train and seriously and dangerously hurt and injured in his spine and back, permanently and for life."

The answer contained a general denial and the plea of contributory negligence. There was a trial in which plaintiff had judgment and defendant appealed.

The concurrent testimony of all the witnesses, who testified in the case, was to the effect that it was the duty of the foreman of the switch crew, when he found he could not uncouple or disconnect the two cars between which he had entered while the train was in motion, to emerge therefrom and signal the engineer to stop the train to the end that he might by pounding or otherwise effect the uncoupling. But plaintiff's insistence is that under such circumstances it was the duty of the foreman to antecede the stop signal with a slow or cautionary signal to warn the plaintiff, a switchman who had stationed himself on the string of cars to be cut out of the train, that the

uncoupling had not been effected, so that he could place himself in a position of security against the jerk that would inevitably result from taking up the slack by reason of the sudden stoppage of the train.

It is plaintiff's further insistence that the stop signal given by the foreman when he emerged from his position between the cars was that which is always given when the uncoupling has been effected. It is perfectly obvious that when an uncoupling has been effected and the car or string of cars to be cut out of the train has been detached and the part of it to which the engine is attached is brought to a sudden stop by the engineer on receiving the stop signal from the switchman, there can be no jerking motion communicated to the detached car or string of cars by such stoppage and, therefore, no danger to the riding switchman. Accordingly, it would seem that when the switchman effects the uncoupling it is his duty to give to the engineer the stop signal on the receipt of which he may bring the train to a sudden stop, but when such switchman fails to effect the uncoupling for any reason, that he should give the slow or cautionary signal so that the engineer may slowly bring his train to a stop and the switchman riding on the car or cars to be detached may avoid being thrown therefrom by the taking up of the slack.

The theory of the plaintiff, as appears from his pleadings, evidence and instructions, was that amongst the signals provided and maintained by the defendant, for the use of its employees engaged in the business of operating its trains within its yards and switch limits, was the stop signal given by its switchman at the time the plaintiff was injured and a slow or cautionary signal and that the giving of the former before the latter was the proximate cause of the injury complained of. Whether or not such slow or cautionary signal was one which was at the time of the injury in use on defendant's road,

whether regularly prescribed by it or not, is the decisive issue of fact in the case. The plaintiff, to sustain the affirmative of this issue, in substance testified in his own behalf, over the objections of the defendant, that for the last sixteen years he had worked for several railway companies—naming them—in the capacity of switchman, and that when a pin would stick and the uncoupling could not for that reason be made the switchman gave the engineer the slow sign from which the riding switchman on the roof of the car or cars to be cut out, understood that the coupling had not been effected. That on trains that he had seen, if the switchman could not get the pin out and uncouple the cars he would give the slow signal. He would not give the stop signal before giving the slow signal in such case.

It is the bounden duty of every railway company to prescribe an intelligent system of signals to be used by such of its employees as are engaged in the business of handling its trains. It is not alleged that the defendant neglected to prescribe such a system of signals. The allegation is that its switchman neglected to give a signal that was in use on defendant's road. There is no pretense that any evidence of the existence of any regularly prescribed rule of the defendant, or of any rule adopted or in use by the employees of defendant requiring the giving of the slow or cautionary signal by the switchman when he emerges from between the cars of a train which he has been unable to uncouple in consequence of the sticking of the pins or for other causes, was shown. If any such rule prevails on the defendant's road it must be because of the existence of some usage, custom or practice. If there is any custom among railway companies imposing upon the defendant's switchman the duty to give such slow or cautionary signal in cases like the present, to be binding it must be general, uniform, certain and notorious, and known to the parties.

or so universal and general in its character that knowledge may be presumed.    Press Co. v. Stanard, 44 Mo. 71.

Does the testimony of the plaintiff, already referred to, tend to prove the existence of any custom among railroads imposing upon defendant the duty to give the slow or cautionary signal?    The existence of a custom or usage of trade can be proved only by the evidence of those who have such knowledge of the practice and course of business as to create in their minds the belief of its existence.    The *factum probandum* is not a single isolated act or occurrence, but the result or conclusion derived from a series of similar acts or circumstances, creating and establishing in the mind of the witness a belief of the complex whole or comprehensive fact to be the existence of which he is called upon to testify.    In such case belief is knowledge and constitutes direct and primary evidence. Indeed, the existence of a usage could not well be proved by showing particular instances of transacting business in a certain way.    The only proper method of establishing the fact is by the testimony of witnesses who have active and constant experience of the manner in which the trade was conducted in relation to the matter in controversy.    Witnesses must testify to facts and not inferences deducible from them.    He may testify that such was in fact the custom but not that such being the fact he should consider the custom so and so.    Lawson Usages and Customs, 101.    To prove the existence of a custom, something more than the judgment or conclusion of the witness called to support it is required.    A custom is the result of usage and can only be properly shown by proof of the usage from which it may be claimed to be derived.    Gallup v. Lederer, 1 Hun. 282.

Now, suppose it be conceded that the plaintiff's testimony was in effect that on all trains that he had observed when there was a sticking of the pins so that the switchman could

MARCH TERM, 1901. 645

Shields v. K. C. Sub. Belt. Ry. Co.

not effect the uncoupling, the slow or cautionary sign was given does it go far enough to warrant the conclusion, under the rules just adverted to, that such custom existed on defendant's road at the time of the plaintiff's injury? Even if the plaintiff did testify that on all the trains he had observed during the period of his railway employment, the switchman, when unable to effect an uncoupling on account of a sticking of the pin, always gave the slow or cautionary signal before giving the stop signal, that would fall far short of proving that this custom was general, uniform, certain and notorious. There is no statutory or common law, or rule regularly prescribed by defendant or adopted by its employees, or, custom general or local, that imposed upon defendant's switchman, after being unable to effect a coupling and emerging from between the cars the duty to give the slow or cautionary signal before giving that to stop the train. The plaintiff did not testify to any knowledge on his part that the slow or cautionary signal was in general or uniform use amongst railway companies, and as no other witness gave any such testimony we must conclude that there was no evidence adduced which tended to establish the fact that it was defendant's duty to give the signal in question.

Negligence is defined to be a breach of duty. Where there is no duty there can be no negligence. Shearman and Redfield, Negl. secs. 8-15; Peck v. Batana, 32 Barb. 634. The master is responsible for his own negligence and want of care and this may appear from his failure to make proper rules or to establish a proper method for the conduct of his business. Ford v. Railway, 124 N. Y. 493. But as already remarked, the plaintiff's petition does not count on the breach of any such duty and, therefore, defendant can not be held liable in this action for the breach of such an alleged duty, even if proven. Chitty v. Railway, 148 Mo. loc. cit. 74 and 75, and cases there cited. If the defendant was under no duty to give

plaintiff the slow or cautionary signal before the giving of the stop signal, then it is clear that the signal given by the defendant's switchman in the present case was the common or customary stop signal, and if there was a jerk or jolt occasioned by such stoppage, this was a risk against which it was plaintiff's duty to protect himself. It was but one of the ordinary risks assumed by him as switchman. McIntosh v. Railway, 58 Mo. App. 281, and other cases cited in appellant's brief.

It is a matter of common knowledge that the stoppage of freight trains is generally attended with a jerking caused by taking up the slack. Unless a jerk is an extraordinary and unusual one attributable to some defect or imperfection in the engine, machinery, cars or appliances used in connection therewith, or to the unskillful handling of the engine, or neglect in giving of signals, or something of the kind, a recovery can not be had for an injury resulting from a jerk. Pryor v. Railway, 85 Mo. App. 367; Guffey v. Railway, 53 Mo. App. 462; Bartley v. Railway, 148 Mo. 124.

But since we have concluded the plaintiff's evidence was insufficient to carry the case to the jury it is unnecessary to notice the other points discussed in the brief of counsel. As it may be the plaintiff may hereafter be able to supply the deficiency in the evidence required to make out his prima facie case, we shall not only reverse the judgment but remand the cause, which is accordingly so ordered. All concur.