F. E. GRAY et ux., Respondents, v. WABASH RAILROAD COMPANY, Appellant.

Kansas City Court of Appeals, June 18, 1906.

1. COMMON CARRIERS: Connecting Carrier: Delivery: Acceptance: Custom. Although there was an arrangement between connecting carriers that when cars were placed upon a connecting track they would be received for further transportation, such delivery did not amount to an acceptance until the connecting carrier took charge of the property, or accepted the bill of lading or performed some act amounting to acceptance.

2. ———: ———: ———: ———: ———: **Flood.** Ordinarily a carrier must accept freight tendered, but when its tracks are threatened with inundation from an impending and unprecedented flood it can refuse freight tendered although delivered upon its connecting track and is not liable for failure to do any act towards. the preservation of such shipment.

Appeal from Jackson Circuit Court.—*Hon. John G. Park,* Judge.

REVERSED.

*George S. Grover, Frank P. Sebree, John D. Wendorff* and *H. C. McDougal* for appellant.

(1) The uncontradicted proof shows that the great flood of 1903 was rapidly coming, and for that reason defendant refused to receive or accept the cars in question. (2) The attempt to plead and establish the custom and usage of railroads at the Kansas City yards cannot avail plaintiffs. 27 Am. and Eng. Ency. of Law, 716; McAllister v. Barnes, 35 Mo. App. 673; Forney v. Adams, 74 Mo. 139; Ober v. Carson, 62 Mo. 214; Johnson v. Parrott, 92 Mo. App. 203. (3) Having refused to receive the cars, defendant was under no legal obligation to comply with plaintiffs' request to push them to the platform for unloading. "Where there is no duty there is no negligence." Shields v. Railroad, 87 Mo. App. 645. (4) The uncontradicted proof of both parties showing beyond question that defendant refused to receive the cars, the instructions of the court authorizing a recovery if it did "receive" or "accept" them, were wholly unwarranted and in the face of all the evidence.

*O. T. Hamlin* and *Rust & Campbell* for respondent.

(1) As to act of God, we desire to say that defendant is mistaken where he says on page eight of his brief that there was an admission as to this flood being an

act of God. There was positively no admission whatever as to that matter, nor is there a particle of evidence to that effect, nor such an allegation anywhere. (2) To put at a place designated is to deliver. These cars were put at the place designated by the defendant. Joseph v. Andrews Co., 72 Mo. App. 555. (3) Even if it had been proven that this flood came under the term, act of God, it has nothing to do with the liability in this case. It it not even a case of negligence of defendant, mixed with act of God. (4) A delivery on that connection was a delivery to defendant until defendant gave notice that it would no longer receive cars on that connection and that notice was not given until after these cars were delivered. This was live stock, and it was the duty of the 'Frisco to deliver it on that connection at once, as it did.

BROADDUS, P. J.—The plaintiffs for their cause of action allege that on the 29th day of May, 1903, being the owners of certain live stock and other personal property, they shipped the same from Dawson, Indian Territory, in two cars, to be carried to Kansas City over the St. Louis & San Francisco Railroad, there to be delivered to its connecting carrier to be carried to its final destination; that the property was carried by said railroad from Dawson to Kansas City and delivered by it to defendant as connecting carrier at or about six o'clock a. m., May 30, 1903; and that defendant received the property and placed the same in its yards just north of its freight depot in Kansas City, Missouri. Then follows the following allegation: "That there was on May 31, 1903, and prior, in vogue and in force, a rule, custom and usage between the defendant and the St. Louis & San Francisco Railway Company, and other railroads in Kansas City, Missouri, by which it was agreed and understood between them that the placing of freight cars by one of said companies on the connections of any other of such roads was to be considered a delivery to such

latter road, and that by such custom it was understood and agreed, and according to the usage between the Wabash and St. Louis & San Francisco railroads, that a putting of cars by one of said companies on the tracks where these cars were on the 31st day of May, 1903, at the time the water came up around them, was to be considered a delivery to the defendant."

It is then next alleged that at that time the defendant's yards at Kansas City were threatened with a flood of which defendant had notice, and that within a reasonable time after defendant had received plaintiffs' property plaintiffs requested it to ship it out of Kansas City for Bement at once, but that defendant refused so to do; that "there was at said time a stationary platform for the purpose of loading and unloading freight from cars standing along side of defendant's tracks about 40 feet east of the cars in which plaintiffs' property was, and after defendant refused to immediately transport said property, plaintiffs requested the defendant to push said cars to the side of said platform so that these plaintiffs might unload said stock and all other property in both of said cars, agreeing, if they would do so, they would receive said property and release it from all liability, but defendant refused so to do. That at the time these plaintiffs so requested the defendant, there was a locomotive engine belonging to defendant standing at the west end of said cars, and that there was no obstruction between said cars and platform, and that said engine standing as aforesaid was at that time being used as a push engine." The petition then alleges that, if defendant had complied with said request, plaintiffs could have unloaded their property and protected it from the flood without damage; and that in three or four hours afterwards a great deluge of water came over their property, by reason of which it was greatly damaged and plaintiffs were put to great expense, etc.

The answer of defendant is a general denial and alleges further that on May 31, 1903, and for several days thereafter, its tracks were submerged by a sudden, unexpected and unprecedented flood, which is the same flood mentioned in plaintiffs' petition; and that, if plaintiffs suffered any of the damages mentioned in their petition, which it denies, they were the result of, and occasioned by, said flood and not by reason of the alleged negligence of defendant.

The trial resulted in a verdict and judgment against defendant, from which it appealed.

The evidence showed that at the time the property in the two cars were placed upon defendant's connecting track a flood was impending which threatened to submerge its tracks in its yards at Kansas City.    One of the plaintiffs testified that he asked  the  defendant's freight agent if he could get the cars out for him.    The agent answered, "No, we cannot, nor won't accept them, because there is a flood coming in here, and you will have to go and see the 'Frisco people about it and let them get them out."    The freight agent also said later on, "I admit they (the cars) are on our track, but we didn't put them there; we don't receive them."    The agent of the St. Louis & San Francisco Company testified that defendant's agent "refused to receipt either for the billing or the cars themselves."

It was shown that in the conduct of business in the yards of the "Frisco" railroad that all freight to be delivered to the defendant as connecting carrier was put upon the connecting track mentioned and that this custom extended up to the time of said flood.    And it was further shown that defendant was requested by plaintiffs to place the two cars containing their property at the station platform so that it could be unloaded, but defendant refused so to do.    The court tried the case upon the theory that there was evidence of acceptance by the defendant, and that if the jury found there was such acceptance, and that defendant refused to accede

to plaintiffs' request to move the cars to the stationary platform mentioned, they would find for the plaintiff.

The principal question in the case is purely legal. It is, did defendant as connecting carrier accept the two cars containing the property of plaintiffs from the St. Louis & San Francisco Railroad Company? The appellant contends that as the arrangement between connecting carriers at Kansas City was not a custom established by immemorial usage, it did not amount to a law. The plaintiffs admit that it was not such a custom, but insist that it was a "rule, agreement or arrangement," and as such, applied to this case, amounted to an acceptance of the freight placed upon defendant's connecting track.

When plaintiffs showed that their property in the two cars was placed upon defendant's connecting track, the usual place of delivery of freight destined for it as connecting carrier, they did not prove acceptance by defendant for its transportation. Although it was an arrangement or agreement that freight so placed would be accepted for further transportation, it did not amount to an acceptance until defendant took actual charge of such property, or accepted the bill of lading, or performed some other act which in law would amount to an acceptance. There can be no question but what, under ordinary or normal conditions, the defendant in law was bound to accept freight placed upon its connecting track, for that was a duty resting upon it as a common carrier. The placing of freight upon the connecting carrier's tracks does not in the least enhance its legal duty. It amounts only to an arrangement for convenience between carriers.

To say that a carrier is bound under all conditions to accept freight so placed upon its connecting track would be doing violence to the plainest principles of common right. In this instance defendant's tracks were threatened with inundation from an impending

and unprecedented flood of water, which finally culminated in great disaster to railroads and shipments and interruption of all kinds of transportation for several days. Under such conditions, defendant had the right to refuse plaintiffs' property in order to avoid liability for its loss or damage which was then threatened. The flood was of such a character as to fall properly within the legal definition of an act of God, and such was a sufficient excuse for the defendant in refusing plaintiffs' shipment. The defendant having for a justifiable reason refused to accept plaintiffs' shipment, it was under no obligation to push them to the platform to be unloaded. [Shields v. Railway, 87 Mo. App. 637.]

The defendant's instruction in the nature of a demurrer to plaintiffs' case as made out should have been given. Reversed. All concur.