EMMANUEL A. GRIVEAUD, Respondent, v. ST. LOUIS CABLE & WESTERN RAILWAY COMPANY, Appellant.

St. Louis Court of Appeals, January 22, 1889.

1. **Evidence:** GROUNDS OF OBJECTION. An objection against the admissibility of evidence on grounds which are untenable will not avail the objector because there exist other grounds which would have sufficed to exclude the evidence, but which were not presented for consideration in the trial court. The disregard of objections which do not advise the court and the adverse party of the true ground of objection is not error.

2. **Damages:** EVIDENCE: DIMINUTION OF BUSINESS. Evidence showing the amount of the plaintiff's business earnings prior to the injury complained of, and the extent to which they were diminished in consequence of the injury, was rightly admitted, as indicating a proper element of compensation to which the plaintiff was entitled.

3. **Damages:** NEGLIGENCE: CAUSES OF INJURY. If the disarrangements of structure in the defendant's cable railway were owing to defects in its original construction or design, the defendant would be liable for injuries resulting therefrom to any one in the lawful use of the street. And if the plaintiff's injuries resulted from a widening of the slot in the railway, which widening was continually likely to occur from frost and thaw and from the passage over it of heavy freight-wagons, then the defendant was equally liable, because its duty of inspection was commensurate with the necessity for such inspection.

4. **Instructions:** DEFECTIVE CONSTRUCTION AND DESIGN. An instruction to the effect that the defendant would not be liable for the plaintiff's injuries resulting from the opening of the slot, if the said opening was caused by heavy teams passing over the same, and if defendant did not know that such opening existed, and could not have known thereof from the most careful inspection in time to have remedied the defect before the occurring of the accident, was properly refused, because it omitted one possible element of the defendant's liability, namely, that the roadbed may have been deficient in original construction and design.

*Appeal from the St. Louis City Circuit Court.*—HON. DANIEL DILLON, Judge.

AFFIRMED.

*Martin, Laughlin & Kern,* for the appellant.

The court erred in admitting testimony showing the contracts plaintiff had on hand at the time he was injured. Such damages must be specially pleaded and alleged in the petition. 2 Greenl. Ev. sec. 254; 1 Chitty [4 Ed.] 328-346; Sedg. on Dam. [4 Ed.] 682, 685. Plaintiff should not have been allowed to testify as to his earnings for previous years, because such evidence does not come within the rule which allows parties to testify where the amount to be received, or that has been received, is definitely fixed. Any income of a professional man for one year is no guarantee that it will be similar for another year. *Masterson v. Village,* 58 N. Y. 391; *Baldwin v. Railroad,* 4 Gray, 393; 1 Suth. on Dam. 766. The court erred in giving and refusing instructions. This court, in the case of *Lampert v. Gas Co.,* 14 Mo. App. 395, expressly declared the true doctrine to be that parties using the street with the consent of the city could only be held liable for failure to exercise reasonable care in its supervision of this using of said streets, and only responsible for its failure to correct any errors in their use after a reasonable time in which to correct them, after they were found out, and

that there would be no presumption of negligence in its failure to do so, only after such reasonable time had passed after the error in its use had occurred, so as to presume that it had notice. The supreme court, in the case of *Squires v. City*, 89 Mo. 226, declares that the following principle is proper : "If the city knew, or, by the exercise of reasonable care and caution, could have ascertained, the defective condition of its sidewalks, it is responsible for injuries received by reason of such defective condition, although not one of a hundred persons passing over it would have noticed the defect." And yet the trial court in this case refused to give the defendant an instruction of this nature in reference to the opening of this slot, and in *Carrington v. City*, 89 Mo. 208, it is held that if the unsafe condition of streets is brought about by persons other than the agents of the city, it devolves upon the plaintiff to show that the city had notice of the defect, or by the exercise of reasonable care and watchfulness ought to have gotten knowledge thereof. The defendant was only liable for reasonable care, such as good business-men give to the construction and operation of its road. Dillon Mun. Corp. sec. 1015 ; Whart Neg. secs. 816, 962, 963 ; *Clark v. Fry*, 8 Oh. St. 858 ; *Fisher v. Therical*, 21 Mich. 1 ; *Denlan v. City*, 13 I. 399 ; *Mayor v. Sheffield*, 4 Wall. 189.

*F. H. Bacon* and *Boyle, Adams & McKeighan*, for the respondent.

The plaintiff was properly allowed to testify as to the amount of his income before and after the accident, and as to the amount of cash fees agreed to be paid in advance for surgical operations under contracts previously made by patients who actually presented themselves to him for such operations while he was disabled from attending them, because of the injuries received in the accident, and were turned away. That the value of the time of the injured party, lost because of the injury

caused by the negligence of defendant, is a proper element of damages is an elemental principle. 2 Thomp. on Neg. 1256 ; *Hayes v. Railroad,* 15 Mo. App. 584 ; *Parshall v. Railroad,* 35 Fed. Rep. 649 ; *City v. Campbell,* 67 U. S. 592 ; *Walker v. Railroad,* 63 Barb. 261 ; *Luck v. Ripon,* 52 Wis. 196 ; *Nash v. Sharp,* 19 Hun, 365 ; *Logansport v. Justice,* 74 Ind. 379 ; *Metcalf v. Baker,* 57 N. Y. 662. In *Woodbury v. District of Columbia,* 5 Mackey, 127, evidence as to the income of an injured physician and his eminence in his profession was admitted. *Geveke v. Railroad,* 57 Mich. 589 ; *Railroad v. Dale,* 76 Pa. St. 47 ; *Masterton v. Mt. Vernon,* 58 N. Y. 395 ; *Express Co. v. Nichols,* 33 N. J. L. 437 ; *Ware v. Welch,* 32 Mich. 77 ; *Kinney v. Crocker,* 18 Wis. 82 ; *Walter v. Post,* 6 Duer, 364 ; *Rockwell v. Railroad,* 64 Barb. 438 ; 53 N. Y. 625 ; *Stafford v. Oskaloosa,* 64 Ia. 251 ; *Nones v. Northouse,* 46 Vt. 587. The instructions given by the court for the plaintiff were proper and legal. *Keitel v. Railroad,* 28 Mo. App. 657. Even admitting that the duty of the railway company is no different from that of the city, it must be held that when a dangerous structure is put in the streets, such as the testimony of defendant's witnesses shows this to have been, the city would be liable for injuries caused thereby without proving notice, for such a structure is a nuisance. The city was liable in this case. Municipal corporations are bound to keep the streets and highways in a proper state of repair, free from obstructions, so that they will be reasonably safe for travel, and if they neglect to do this, or affirmatively allow the street to be made unsafe by a structure amounting to a nuisance, they will be held liable for all injuries happening by reason of their negligence. Responsibility cannot be avoided by arrangement with other parties. *Blake v. St. Louis,* 40 Mo. 569 ; *Bowie v. Kansas City,* 51 Mo. 454 ; *Welsh v. St. Louis,* 73 Mo. 71 ; *Bassett v. St. Joseph,* 53 Mo. 298. The case of *Carrington v.*

*St. Louis*, 89 Mo. 208, cited by appellant, has no bearing upon this case because the city authorized this structure. Moreover, the structure was under the exclusive control of the defendant, and had been erected by it and no notice of a defect was required. It was bound to a most constant vigilant inspection. The city and railway company are both liable for injuries caused by defect in track of latter. *Hawks v. Northampton*, 116 Mass. 420; *Brooklyn v. Railroad*, 47 N. Y. 475; *Bailey v. Boston*, 116 Mass. 423; 2 Dillon Mun. Corp., sec. 1024; *Hinds v. City*, 22 Mo. App. 214; *Squires v. Chillicothe*, 89 Mo. 226; *Davenport v. Ruckman*, 37 N. Y. 573; *Yocum v. Trenton*, 20 Mo. App. 496. Neglect of a statutory duty is negligence *per se*. *Goodwin v. Railroad*, 75 Mo. 73; *Karle v. Kansas City*, 55 Mo. 476; *Boggs v. Railroad*, 15 Mo. App. 277; 2 Thomp. Neg. 1232. The ordinances required defendant to keep its road in good repair, and by the plans and specifications filed by the city, the standard of repair was that the slot should be five-eighths of an inch wide; when the slot became one and a half inches wide, as it was at the place of the accident, the road was out of repair and the statutory duty violated. *Worster v. Railroad*, 50 N. Y. 205; *Fash v. Railroad*, 1 Daly, 148; *Rockwell v. Railroad*, 64 Barb. 438; *Wilson v. Turnpike Co.*, 21 Barb. 79. The ordinance requires defendant to keep its track and appurtenances in good repair. By accepting this ordinance a contract is created for the benefit of the citizens of the city, and for the violation of which the injured party may maintain an action. *Troy v. Troy*, 49 N. Y. 657; *Brooklyn v. Railroad*, 47 N. Y. 475; *Karle v. Railroad*, 55 Mo. 476; *Drain v. Railroad*, 10 Mo. App. 535. Where the plan of construction or the material to be used therein are definitely prescribed by statute non-compliance with the statutory requirement is a nuisance, and the party injured may recover his damages without proving negligence.

*Wilson v. Turnpike Co.*, 21 Barb. 68 ; *Cox v. Turnpike Co.*, 33 Barb. 414; 2 Thomp. Neg. 1232, sec. 5 ; *Congreve v. Smith*, 18 N. Y. 79 ; *Robbins v. Chicago*, 71 U. S. 679 ; 2 Dill. Mun. Corp., sec. 1030. The evidence showed that if a loaded wagon would cause the slot to open out and become dangerous to public travel, the company confessedly knew the fact. The city could not authorize them to maintain such a nuisance. *Keitel v. Railroad*, 28 Mo. App. 657 ; *Lackland v. Railroad*, 31 Mo. 180.

ROMBAUER, P. J., delivered the opinion of the court.

The defendant corporation operated in February, 1886, a double-track cable street railroad on certain streets of the city of St. Louis, by license of said city. The roadbed and apparatus of this railroad was constructed in the following manner according to plans and specifications submitted to the board of public improvements of the municipality, and presumably with its sanction: An oval-shaped sheet-steel conduit, about three feet deep, is laid in the street in sections eighteen feet in length, clasped at intervals by steel T rails (such as are used on steam railroads) bent about the conduit, and with arms extending to hold the rails on which the cars run. At the top of the conduit the two arms of this bent rail come closely together before being extended to meet the rails, and bolted to these arms at the top of the conduit, at the place where the bends come nearest together, are two parallel Z steel bars forming a slot over the conduit. The conduit and structure is made solid by rubble stone and cement packed around it, and the space between the tracks is laid with granite paving-blocks ; the width of the slot was to be five-eighths of an inch, and this width could be maintained and regulated by means of steel rods extending from the slot-bars to the rails of the track. The cars are propelled by a wire rope running in the

conduit, which is operated by machinery at a central station. This rope is reached by a gripping apparatus which is attached to a grip-car, and extends down through the slot, clasping such rope or cable. This structure, apparently, is massive, and if the slot is kept only five-eighths of an inch wide is safe and is no obstruction to travel on the street.

At seven o'clock, P. M., of February 11, 1886, it being then quite dark, while the plaintiff, a practicing physician, was driving a four-wheel buggy along Morgan street, and on defendant's track, both wheels on one side of his vehicle dropped through the slot into the cable conduit. The vehicle was brought to a sudden halt, and the plaintiff, by the jar thus caused, was thrown violently against the dash-board, and, the whipple-tree breaking, was precipitated to the ground, receiving serious injuries, whereupon he brought this action. The petition, after stating the necessary facts to maintain an action for negligence, and detailing the injuries received, concludes as follows: "That plaintiff was made to suffer great physical and mental pain and anguish, and was compelled to incur heavy expense for medical attendance and nursing, and was disabled from pursuing his said vocation and business of physician, and was compelled while so disabled to refuse business offered to him, which would have brought him fees and profits to the amount of two thousand dollars, and was and is permanently injured," claiming damages to the amount of ten thousand dollars. The plaintiff recovered a verdict and judgment for fifteen hundred dollars, and the defendant appealing assigns for error that the court admitted illegal evidence, gave an erroneous instruction for plaintiff and refused to give a proper instruction asked by the defendant.

The evidence offered tended to show that the slot where the plaintiff's buggy-wheels fell through was at the date of the accident more than one inch and a half

wide, and that the tires of the wheels of plaintiff's vehicle were of the standard width of such vehicles, which is an inch and one-eighth, scant. Touching these facts there is no controversy. The evidence further tended to show that while the slot was originally constructed of the width prescribed by the specifications, to-wit, five-eighths of one inch, its width is likely to contract and expand from various causes, among which the freezing and thawing of the adjoining material, and the passing of very heavy loads over the track are the most prominent; that these facts were well known to the defendant and it kept a force of from twenty-five to thirty men constantly going over its track, a distance of six and a half miles, to adjust this slot. There was no evidence showing whether this force of men was adequate or not, nor was there any evidence showing or tending to show that the slot had widened on this particular occasion from any other cause than the usual causes apt to bring about such result.

On the question of damages the plaintiff gave evidence tending to show that at the date of the accident, he had contracts for performing three surgical operations in the month of February, which by contract would have yielded him fourteen hundred dollars, and which he could not fulfill on account of his physical condition caused by this accident. When this evidence was offered the defendant objected to it on the ground that it was immaterial and irrelevant, and not a proper element of damages. The objection was overruled and the defendant excepted and still excepts. We are inclined to hold that if the objection had been placed on the proper ground, namely, that no special damages were claimed in the petition, the court ought to have sustained the same. The reason of the rule which requires such special damages to be specially pleaded is not satisfied by an averment that plaintiff "was compelled while so disabled to refuse business offered to

him," as such averment does not advise the defendant of any facts which it can meet by countervailing evidence. But as appears, the objection was not placed on any such ground; if it had been, the plaintiff might have amended his petition by specifying the contracts. It seems to have been conceded that the averment of special damage was sufficient, but that the damages thus sought to be shown were not proper elements of damages. The rule in this state is well settled that the disregard of objections which do not advise the court and the adverse party of the true ground of objection is not error.

The plaintiff was permitted to show against defendant's objection what his professional earnings were in preceding years, and at dates immediately preceding the accident, and to what extent his earnings were diminished by his inability to pursue his vocation owing to the injuries received. We see no error in this. If the plaintiff at the time of the injury was engaged in legitimate business, from which pecuniary profits had arisen and future profits might reasonably be expected, which business was interrupted or suspended in consequence of disabilities, physical or mental, inflicted by the negligence of the defendant, the loss of such anticipated profits is properly the subject of compensation. The cases maintaining this view are numerous. *Pennsylvania Railroad v. Dale*, 76 Pa. St. 47; *Nebraska City v. Campbell*, 67 U. S. 592; *Luck v. Ripon*, 52 Wis. 196; *Logansport v. Justice*, 74 Ind. 379; *Metcalf v. Baker*, 57 N. Y. 662; *Geveke v. Railroad*, 57 Mich. 589; *New Jersey Express Co. v. Nichols*, 33 N. J. L. 437; *Stafford v. Oskaloosa*, 64 Ia. 251; *Nones v. Northouse*, 46 Vt. 587. It is true, as said in some cases, that what the plaintiff earned in his profession before is not necessarily evidence of the fact that he would earn the same amount thereafter if not disabled, but that objection goes to the weight of the evidence and not to its admissibility.

It is certainly a proper item for the consideration of the jury, since otherwise, professional men, whose probable earnings cannot be measured by a fixed money standard, would be at great disadvantage to prove any damages resulting from the loss of probable employment. There was evidence that plaintiff's injuries were of a permanent character. No complaint is made either in the motion for new trial or before us that the damages are excessive, and the evidence offered fully justified the recovery had. Hence we see nothing on the question of damages of which the defendant can justly complain.

The court, at plaintiff's instance, gave the following instruction:

"The court instructs the jury that it was and is the duty of the defendant railway company to keep its track and appurtenances, including its conduit and slot, upon the public streets in the city of St. Louis occupied by it, in a reasonably safe condition for the passage along such streets of vehicles in ordinary use in the said city, both by day and night, and that plaintiff had a right to rely upon the performance of such duty by defendant and to regulate his conduct accordingly. And if the jury find from the evidence that at the time and place of the accident complained of, if the said place was a public street in said city, the cable-slot of defendant's road was in an unsafe and dangerous condition for the passage on said street of vehicles in ordinary use as aforesaid, because of the widening out of such slot so as to allow the wheels of such vehicles in ordinary use to fall therein, and if plaintiff, while in the exercise of ordinary care, was injured by being thrown from his buggy or vehicle by its wheels, if the tires of such wheels were no narrower than those of similar buggies or vehicles ordinarily used in said city, falling into said slot, then defendant is liable for the injuries so sustained by plaintiff, and the jury will find for plaintiff."

And refused to give the following instruction asked by the defendant:

"The court instructs the jurors that under the ordinances read in evidence the defendant had the lawful right to lay its tracks in Morgan street, where plaintiff's injuries are alleged to have occurred in such a way as to admit of a proper and sufficient opening in said street at said point for its gripping apparatus, and although the jurors may believe and find from the evidence that the wheel of plaintiff's buggy dropped into said opening because the same was wider than was necessary for the gripping apparatus to pass therein, still the defendant is not liable for any injuries occasioned thereby if the jurors are satisfied from all the evidence that the said opening was caused to widen out on account of heavy teams passing over the same, and that the defendant did not know that such opening existed, and could not have known, from the exercise of the most careful inspection, that such opening existed, in time to have remedied the same before said accident occurred."

By examining the evidence above detailed two facts are apparent. First, that the slot so constructed by defendant is apt to widen by the action of frost and thaw, and the passage of heavy freight-wagons over the roadway. Second, that the defendant was fully aware of these facts. It cannot be questioned on the authorities that if these disarrangements of the structure are owing to defects in its original construction or design, the defendant is liable for injuries resulting therefrom to any one in the lawful use of the street. It is elementary that a municipal corporation has no legal right to erect or to authorize the erection of a dangerous nuisance upon its streets, and the defendant's rights can be no greater than those of the city. On the other hand, if the original structure was without fault in design, and yet liable to get constantly out of repair, owing to the action of the elements, or to the ordinary

traffic upon the street, and owing to a want of repair thus caused injury resulted to one lawfully upon the street, the defendant is equally liable, because its duty of inspection is commensurate with the necessity of such inspection.

In *Keitel v. St. Louis Cable Railway Co.*, 28 Mo. App. 665, we said, after a very thorough consideration of this subject, that "if the proprietors of this new mode of transit cannot maintain their roadways without creating such nuisances in the streets, they must answer for damages to travelers injured, or not maintain them at all." We cannot see how we can recede from this position without a violation of fundamental rules applicable to the streets of a city. We do not decide that the duty of defendant is that of an insurer of the safety of its roadway. Unforeseen causes might arise, causing a temporary disarrangement, for which the defendant could not be held justly liable, but here, in any view of the evidence, the cause was one of constant occurrence, well known to the defendant, and against the effects of which it was its duty to guard. The plaintiff's instruction given was strictly in conformity with the law as above stated, and unexceptionable under the evidence. There was no evidence that the slot had widened by some wholly unforeseen event, against which the defendant could not reasonably guard. The defendant's instruction was rightly refused because it wholly omits one element of defendant's liability, namely, that the roadbed was deficient in original construction and design. If the passage over it of heavy teams, lawfully and constantly upon the street, increased the danger of the roadbed to such an extent that the most careful inspection could not guard against accidents of this character, then surely the structure was a nuisance in itself, which neither the city could authorize, nor the defendant lawfully maintain.

These being the only errors assigned and neither of the objections being tenable, it results that the judgment must be affirmed, and with the concurrence of all the judges, it is so ordered.