JAMES PRYOR, Respondent, v. METROPOLITAN STREET RAILWAY COMPANY, Appellant.

Kansas City Court of Appeals, November 5, 1900.

1. **Evidence: PERSONAL INJURY: MEASURE OF DAMAGES: EARNINGS: PROFITS.** Earnings are the reward of labor; profits are the net gains of an investment or a business. The measure of damages for personal injury is the loss of earning capacity; the evidence of prior earnings must be restricted to those derived entirely from personal skill and service, and previous profits are admissible.

2. ———: ———: ———: ———: ———: **PREJUDICE: INSTRUCTIONS.** Since the admission of annual profits on measure of damages is erroneous, it is presumed to be injurious and this record does not rebut such presumption; and an instruction making no reference to profits or earnings will not cure the error which can only be accomplished by the withdrawal of such evidence.

3. **Street Railways: NEGLIGENCE: SUDDEN START: WARNING: WRONG SIDE OF STREET: ORDINANCE.** An ordinance required street cars moving west to stop on the west side of the street to discharge their passengers; but also compelled them to stop on the east side until signaled by the flagman to cross. Held, the company was not bound to give warning of its car starting to cross the street unless it knew the passenger was in peril.

4. ———: ———: ———: ———: ———: ———: **INSTRUCTIONS.** The starting of a car while a passenger is standing up is not ordinarily negligence unless the start is made with an extraordinary jerk, attributable to a defect in the track or train or skill of the gripman. Instructions set out in the opinion condemned.

5. **Negligence:** PLEADING: RECOVERY: INSTRUCTIONS. In an action for negligence, if the petition specifies particular acts, plaintiff must by the instructions be restricted to such alleged acts for his recovery; the instructions set out in the opinion were improperly refused.

6. **Street Railways:** SUDDEN START: TAUT CABLE: JUDICIAL NOTICE. Courts will take judicial notice that a cable car on an up grade through a reverse curve can not cross another track without a sudden start; and that the cable can not be kept taut and that jerks are common and unavoidable.

7. **Trial Practice:** INSTRUCTION: COMMENT ON EVIDENCE. An instruction commenting on evidence is unnecessary.

8. **Damages:** PERSONAL INJURY: PLEADING: LOSS OF TIME: INSTRUCTION. Where the pleadings and evidence do not authorize a recovery for the loss of time, an instruction permitting such recovery is erroneous.

Appeal from the Jackson Circuit Court.—*Hon. E. P. Gates,* Judge.

REVERSED AND REMANDED.

*Frank Hagerman* and *Willard P. Hall* for appellant.

(1)   Evidence of profits made by plaintiff was inadmissible.   Evidence in that regard should have been confined to his earnings.   Profits in business are not earnings.   Goodhart v. Railroad, 35 Atl. Rep. 191; Railroad v. O'Reilly, 158 U. S. 334; 8 Am. and Eng. Ency. of Law (2 Ed.), 654; Blate v. Railroad, 51 N. Y. Supp. 590, and cases cited; Silsby v. Car Co., 54 N. W. Rep. 761; Bierbach v. Rubber Co., 11 N. W. Rep. 514; 1 Sedg. on Dam., sec. 181.   (2)   Servants in charge of car were not bound to know that plaintiff was, or anticipated that he would be, standing up while car was at the east side of Main street.   Jackson v. Railroad, 118 Mo. 199; Bachrach v. Railroad, 54 N. Y. Sup. 958.   (3)   Plaintiff

should have been confined to the negligence alleged in his petition. The court's refusal to thus confine him was manifest error. Bartley v. Railroad, 148 Mo. 124. (4) It was error for the court to instruct the jury as to any negligence other than the failure to give signals of warning, and this is especially true as to the motion of the car in starting. Black v. Railroad, 37 N. Y. Supp. 830; Bartley v. Railroad, 148 Mo. 124. (5) The trial court commented upon the evidence in instruction number 3 given for plaintiff. Benjamin v. Railroad, 50 Mo. App. 612; Blair v. Railroad, 31 Mo. App. 231; Spohn v. Railroad, 87 Mo. 74. (6) The trial court erred in failing in instruction number 4, given for plaintiff, to instruct the jury as to the elements constituting the measure of damages.

*Wallace & Wallace* for respondent.

(1) The court did not err in permitting the plaintiff to state in a general way what he was making as a contractor at the time he was injured. There was no attempt in this case to recover for the loss of profits as in the case of Griveaud v. Railroad, 33 Mo. App. 458; Rosenkranz v. Railroad, 108 Mo. 9; Schmitz v. Railroad, 119 Mo. 256; Griffith v. Railroad, 98 Mo. 168. (2) We have already shown in the statement, from the evidence of the conductor who was a witness for the defendant, that the conductor saw the plaintiff getting out into the aisle to let the other passenger get off at the time he started the car. Of course when the defendant thus admitted the fact it was not necessary for the court to require the jury to find this fact in order to allow the plaintiff to recover. Russell v. Ins. Co., 55 Mo. 585; Slayback v. Gerkhart, 1 Mo. App. 333; Jackson v. Railroad, 118 Mo. 200. (3) The ground of the next contention is that the court mod-

ified the second instruction asked on behalf of the defendant by eliminating from the said instruction these words: "As he has specified in his petition." It has always been held error to refer the jury to the pleadings in the case to determine what the issue is, it being the duty of the court to inform the jury of the issue in its instructions. Railroad v. McGrew, 104 Mo. 282; Procter v. Loomis, 35 Mo. App. 482; McGinniss v. Railroad, 21 Mo. App. 399. (4) The appellant's fourth assignment of error relates to the instruction bearing upon the question of the alleged sudden starting of the car; on the ground as claimed by the appellant that there was no such allegation in the petition. We have already shown in the statement by reference to the record that the petition did count upon the alleged sudden starting of the car, that the evidence abundantly proved this allegation of negligence, and that the appellant itself asked and obtained an instruction upon this very question. (See defendant's instruction number 6.) For cases holding that the sudden starting of the car under the circumstances is negligence, see Barth v. Railroad, 142 Mo. 550; Railway v. Manning, 170 Ill. 417. (5) It is claimed by the appellant that the third instruction given on behalf of the plaintiff is a commentary upon the evidence. This instruction does not even mention or refer to any of the evidence. Hickman v. Railway, 91 Mo. 433; Devitt v. Railway, 50 Mo. 302; Zimmerman v. Railroad, 71 Mo. 476; State v. Seal, 47 Mo. App. 603; Nicholson v. Golden, 27 Mo. App. 154; Tyler v. Hall, 106 Mo. 323; Chouteau v. Iron Works, 83 Mo. 73. (6) The last point made by the appellant criticizing the instruction on the measure of damages is without merit. Browning v. Railway, 124 Mo. 71.

SMITH, P. J.—This is an action which was brought to recover damages for personal injuries alleged to have resulted from the negligence of the defendant. The particular

negligence specified in the plaintiff's petition is that the defendant suddenly caused the car, on which plaintiff was a passenger, to be started without ringing any bell and without any warning whatever to plaintiff that it intended to start the same, whereby plaintiff was suddenly and violently thrown backward and against the end of the second seat from the one in which he was sitting whereby he was permanently injured.

The answer was a general denial with which was coupled the plea of contributory negligence.

The plaintiff had judgment and the defendant has appealed here.    The errors assigned for a reversal of the judgment relate to the admission of evidence and the giving and refusal of instructions.

During the progress of the trial, while the plaintiff was testifying as a witness in his own behalf his counsel asked him to state to the jury what had been his business—vocation in life—and to this he replied that he had been engaged some eleven years before he was hurt in doing public work in Kansas City and occasionally elsewhere under contract; or, in other words, that during that period he had been a contractor engaged in doing work on the public improvements.    He was then further asked by his counsel to state about how much money per annum he had cleared from this business during the ten or eleven years before he was hurt.    To this the defendant objected. as calling for testimony that was incompetent and as tending to prove speculative damages, the recovery of which was improper and unauthorized.    The court overruled the objections so made and thereupon the plaintiff was permitted to testify that during the period referred to he had made clear from four to twelve thousand dollars per annum. The defendant now insists that the action of the court in permitting the plaintiff to give such testimony was an error fatal to the judgment.

It is argued by the defendant that profits made by plain-

tiff in carrying on his business of public contractor were not earnings and therefore testimony tending to prove the same ought not to have been admitted. The word "earnings" means the fruit or reward of labor; the price of services performed. Profits represent the net gain made from an investment or from the prosecution of some business after the payment of all expenses incurred. The net gain depends largely on other circumstances than the earning capacity of the person managing the business. The profits of a business with which one is connected can not, therefore, be made use of as a measure of his earning power. Evidence showing that one has conducted a business with profit tends to show the possession of business qualities but it does not fix their value. It is the well-established law that where one is injured in consequence of the negligent or wrongful act of another it is entirely competent for the former to show the loss of earning capacity in his business or occupation. But previous earnings must be restricted to those derived entirely from personal skill and services. Previous profits in business are not admissible in evidence in cases of this kind because of their speculative character. Johnson v. Railway, 52 Hun. 111; Silsby v. Michigan Car Co., 95 Mich. 204; Goodhart v. Railway, 177 Pa. St. 1; Malone v. Railway, 152 Pa. St. 390. And so it has been held that profits in conducting a business involving the labor of others, like that of a contractor doing work on public improvements, is not a necessary consequence of a personal injury to plaintiff. The extent of his recovery upon this ground would be what his services were worth in the conduct of such business as he was engaged in. Silsby v. Railway, *ante;* Johnson v. Railway, *ante;* Marks v. Railway, 14 Daly 61; Masterson v. Mt. Vernon, 58 N. Y. 391; Bubach v. Rubber Co., 54 Wis. 208.

It is well settled in this state that prospective damages on account of the impairment of the plaintiff's earning capacity

in the future is a proper item of damages in cases of personal injuries. In such cases, proof of his previous physical condition and ability to labor and follow his usual avocation as well as his condition since the injury is admissible to enable the jury to properly find the pecuniary damage. Schmitz v. Railway, 119 Mo. 256; Rosenkranz v. Railway, 108 Mo. 9; Whalen v. Railway, 60 Mo. 323; Pry v. Railway, 73 Mo. 124. But the plaintiff contends that it was not his purpose to recover for loss of earnings, and that he only sought to recover for the impairment of his physical ability; but even if this be true, did evidence of the annual profits which the plaintiff had made in carrying on the business of public contractor for the eleven years previous to the date of the reception of his injury tend to enlighten the mind of the jury as to what should be the quantum of recovery for the items of damage which it was authorized by the instructions to consider?

But while it is impliedly conceded that the admission of such evidence was improper, it is contended that it was entirely harmless. How can we tell that? If the action of the court in admitting this evidence was erroneous, as we must think was the case, then we are bound to presume that it was injurious to the defendant; and the burden rests upon the plaintiff to show beyond all doubt that the defendant was not injuriously affected by it. Bindbeutal v. Railway, 43 Mo. App. 463; Railway v. O'Reilly, 158 U. S. 334. And we are unable to discover anything in the record repelling this presumption.

It is also true, as suggested by the plaintiff, that the instructions relating to the measure of damages made no reference to profits of business or to loss of earnings, yet we can not see that this had the effect to correct the error referred to. Nothing short of an instruction withdrawing such evidence from the consideration of the jury could effectually accomplish that. It may be here remarked that an examination of

the case of Griveaud v. Railway, 33 Mo. App. 458, will show that there is nothing in the ruling there that stands opposed to that here made.

The court, against the objections of the defendant, gave to the jury for plaintiff the following instructions: 2. "The court instructs the jury that if you believe from the evidence that one of the cars of the defendant, on which the plaintiff was a passenger, on or about the thirtieth day of September, 1890, while going westward on Twelfth street in Kansas City, stopped at the east side of Main street, and that while the car was standing at that place and while a number of passengers thereon were attempting to get off the car, the plaintiff arose from his seat to allow a passenger sitting next to him to get into the aisle of the car for the purpose of getting off; and that while the plaintiff was standing on his feet for this purpose, the agents and servants of the defendant, without any warning, caused said car to be suddenly started; whereby the plaintiff was suddenly and violently thrown backward upon one of the seats of the car and thereby injured, then you will find your verdict for the plaintiff, provided you believe from the evidence that such sudden starting of the car without warning constituted neligence on the part of the defendant's servants, and provided you further believe from the evidence that the plaintiff was himself exercising ordinary care and caution at the time. By ordinary care is meant the care and caution which an ordinarily prudent person would observe under the same or similar circumstances."

3. "And if you find from the evidence that while the car was standing at the east side of Main street a number of its passengers began to get off, and the plaintiff stood up to allow a passenger to get into the aisle for the purpose of getting off, in determining whether those in charge of the car were guilty of negligence, you are instructed that while the plaintiff was in this situation it was the duty of those in charge of the car

to use the highest degree of care and caution which ordinarily prudent persons would use under the same or similar circumstances, to see that the car was not so suddenly started as to throw the plaintiff down and injure him.    And it is for the jury to determine from all the evidence whether the car was started in a negligent manner."

It is not disputed that under an ordinance of Kansas City the defendant was required to stop the train of which the car in question was a part on the west side of Main street so that the passengers therein could there leave it.    Nor is it disputed that it was likewise required to stop its train on the east side of Main street before crossing until signaled by the flagman stationed there to proceed.    The stoppage of the train on the east side of Main street was not made to allow passengers to enter or leave the cars.    The rules of the company and the ordinance of the city forbid it to do so; and this the plaintiff, a resident of the city, was conclusively presumed to know. Jackson v. Railway, 118 Mo. 190.    The defendant's servants in charge of the train were not therefore bound to give plaintiff any warning of the starting of such train unless they knew, or, by the exercise of reasonable care could have known, that plaintiff was then in a dangerous situation.    Yet, the plaintiff's said instructions in effect declared that the servants of defendant in charge of the train were bound to know plaintiff's peril and should have given him a warning before starting the train, whether they actualy knew of his peril or by the exercise of reasonable care could have known it.    Jackson v. Railway, *ante;* Bachrach v. Railway, 54 N. Y. Supp. 958.

It seems in effect conceded by plaintiff that his said instructions would be erroneous in enunciation were it not for the fact, as he contends, that the defendant's conductor, who was a witness in its behalf, testified that he saw the plaintiff and others standing in the car before it started, and that it was started before they had time to resume their seats if they

had desired to do so.   But, suppose it to be true that plaintiff
and others were standing up in the cars at the time the train
started; were they in a situation of danger?   It is a matter of
common information that it is usual and common for persons
while riding on street railway cars to stand or sit at pleasure;
to move from one seat to another, or, to get up and surrender
their seats to others, and the like, without reference to
whether the cars are standing still, moving or about to move;
and in doing so their situation, so far as we know, has never
been held that of danger, unless under some peculiar circum-
stances.

Had the plaintiff been aged and infirm or physically dis-
abled and his condition known to the defendant's conductor,
it would no doubt have been negligence on the part of defend-
ant to have started its train without giving plaintiff some
warning or a reasonable opportunity to resume his seat if he
desired to do so; but we have no such case here, for the plain-
tiff was, as he admits, then a strong and active man.   The
starting of a car while a passenger is standing up is not ordi-
narily negligence, even if it be known to the conductor that
such passenger be then standing, unless it is where it is started
with a jerk, and the jerk is an extraordinary and unusual
one, or is attributable to a defect in the track, or, in the cars
or apparatus, or, to unskillful handling of the cars by the grip-
man.   Bartley v. Railway, 148 Mo. 124.   The passenger who
occupied the same seat with the plaintiff had no right to leave
the car, or attempt to leave it, on the east side of Main street
in disregard of the ordinance of the city and the rules of the
defendant.   This, the plaintiff and his co-passenger well
knew.   If they left their seats and stood up in the aisle we
can not think that in doing so they placed themselves in such
a situation of danger as that the conductor, if he saw them,
was required to hold the car stationary until they were again
seated, or had time to leave the car.

The defendant before setting its train in motion to cross Main streét was not required to give its passengers any warning thereof, unless they, or some of them, were discoverd to be in a situation of danger; then it became the duty of its servants to hold the train until the danger was averted. If bells were required to be rung it was not to warn passengers that the train was about to start, but for the information and government of the servants of defendant having charge of the movements of the train. If it be the law that where a train stops momentarily at a street crossing to await the signal from the flagman it can not proceed unless all the passengers thereon are first seated, then indeed is it impracticable to efficiently operate a street railway system under it in such a way as to afford the public a reasonably rapid transit over its lines. Whether the plaintiff was in a situation of danger at the time the defendant's car was started which caused the injury, or, if so, whether defendant's servants knew it, or, by the exercise of reasonable care could have known it, were not admitted or undisputed facts; but, on the contrary, we think these were ultimate facts which along with the other facts should have been left by the instructions for the jury to determine from all the evidence. It necessarily follows from the foregoing observations that the defendant's instruction number 10 should have been given.

The defendant requested the court to give the following instructions, numbered in its series 2 and 9:

II. "In this case, the mere fact, if true, that plaintiff was injured on a car of defendant gives him no right to sue defendant and recover damages. Before, under any circumstances, plaintiff is entitled to a verdict, the jury must find from credible evidence that his injury was actually caused by the negligence of the defendant *as he has specified in his petition and* in the manner submitted to your consideration. If his injuries were not

actually caused by such specified negligence, then he has no case and can not recover, even if he did fall while on the train and was injured thereby, and even if the fall was caused by a jerk of the car. But even if you should find that he was injured by such negligence, still plaintiff can not recover if he by his own act or conduct negligently contributed to his own injury."

IX. "Plaintiff has specified in his petition, as constituting the negligence upon which he relies, the charge that defendant was negligent in starting the train from the east side of Main street without any notice or warning. In considering the question as to whether the defendant was negligent, you are confined to the specific charge thus made, and unless you find that the defendant was negligent in this particular respect you will find for defendant, even though you might think that defendant may have been negligent in some other respect, and even though you think the train was started with more force than was necessary."

The court struck from said instruction number 2 the italicised words thereof and then gave it as modified. The said ninth, which was refused, informed the jury exactly what the particular negligence was which plaintiff had specified in his petition, and on which he relied for a recovery. Why or on what grounds it was refused is nowhere intimated. It now appears to be the settled rule of practice in this state that in cases like this where the plaintiff in his petition, as here, specifies the particular act or acts of negligence that he must be restricted to it. Jacquin v. Railway, 57 Mo. App. 320; Hite v. Railway, 130 Mo. 132; Bartley v. Railway, 148 Mo. *ante;* McManamee v. Railway, 135 Mo. 440. In no other instruction was the jury told in explicit terms just what particular acts of negligence were specified in the petition, nor, were they anywhere told that they should confine themselves in the consideration of the evidence to the negligence specified

in the petition. This cautionary instruction was very necessary in a case like this where it appears that at the time and place of the injury the car on which the plaintiff was riding was a cable railway car which was moving on an up-grade through a reverse curve and across another cable line at a street intersection. It has been held that in such case on an up-grade, a crossing can not be made without a sudden start, of which fact courts will take notice. And it has been further held that it is a matter of common knowledge, of which even a court is not ignorant, as well as a matter of physics, that the rope of a cable car can not be kept taut, and that the jerks which are common and unavoidable to such roads are caused by the slack in the rope being taken up. In order to recover from a cable railroad it is not enough to show that there was a "jerk," but it must affirmatively appear that the "jerk" was an extraordinary or unusual one attributable to a defect in the track, an imperfection in the car or apparatus, or, to a dangerous rate of speed, or, to unskillful handling of the car by the gripman.

In Bartley v. Railway, *ante,* a case somewhat analogous in its essential facts to this, it is said: "It is not true that jerks do not usually occur in the running of cable-cars, but on the contrary, it is a fact they are unavoidable." A recovery for an injury resulting from a jerk can therefore be had only where it appears to have been extraordinary or unusual and attributable to one of the causes just above specified." The evidence was that the car on which plaintiff was hurt was started suddenly and with a jerk, but that this, so far as appears from the evidence, was unavoidable at that place. In the absence of any direction by the court to confine themselves to the negligence specified in the petition, the jury might have concluded that the sudden starting of the car was an act of negligence for which the defendant was liable if plaintiff was hurt in consequence thereof. The defendant's said refused

instruction was necessary to prevent the jury from falling into the error of considering facts which the evidence tended to prove but which did not tend to sustain the issue. The plaintiff's two instructions when read and considered together embodied, it seems to us, an unexceptionable expression of the law, but the refusal of number 9 rendered number 2 quite meaningless.

The plaintiff's third instruction was wholly unnecessary. It was little more than a bare commentary on the evidence within the meaning of the adjudged cases in this state. Benjamin v. Railway, 50 Mo. App. 612; Blair v. Railway, 31 Mo. App. 231; Spohn v. Railway, 87 Mo. 74.

The defendant further objects that the plaintiff's fourth instruction is erroneous in that it authorized the jury in assessing the damages to allow for loss of time. The allegations of the petition, in the light of the approved precedents in this state (Mellor v. Railway, 105 Mo. 455; Coontz v. Railway, 115 Mo. 669; Slaughter v. Railway, 116 Mo. 269) were not sufficient to authorize the admission of evidence to prove the value of loss of time. And even if the allegations of the petition were sufficient to admit such evidence the record fails to disclos any proof of the value thereof. Evidence of profits made by plaintiff in his quality as contractor preceding the time he was hurt did not tend to establish such value.

While it inevitably results from the foregoing rulings that the judgment must be reversed, we think the cause must as well be remanded to the circuit court for further trial for we can not say that there was no evidence adduced to justify the submission of the case to the jury on the issues made by the pleadings.

It is accordingly ordered that the judgment be reversed and cause remanded. All concur.