## HAAS, Respondent, v. ST. LOUIS & SAN FRANCISCO RAILROAD COMPANY, Appellant.

### St. Louis Court of Appeals, December 17, 1907.

1. **MEASURE OF DAMAGES: Personal Injuries: Previous Earnings.** In an action for damages on account of personal injuries, evidence of plaintiff's loss of earnings should be confined to such earnings as plaintiff was receiving at the time of the injury; evidence of earnings on previous years was not admissible.

2. **PRACTICE: Instruction: Assuming Fact.** In an action against a railroad company for injuries to plaintiff caused by his slipping on the steps of defendant's passenger car and falling, where it was shown without dispute that the steps were slippery with sleet and snow, It was not error for the trial court in an instruction to the jury to assume that that condition rendered the steps dangerous.

3. ————: ————: **Ignoring Defense.** In such action where there was evidence tending to show plaintiff negligently contributed to his own injury, it was error to ignore the defense of contributory negligence, which was pleaded.

4. **CARRIERS OF PASSENGERS: Duty of Carriers: Safe Steps.** It is the duty of a railroad company to exercise reasonable care, and to keep the steps and platforms of its passenger cars in a reasonably safe condition for the passengers to get on and off, even if the trains must be delayed for the purpose of removing ice and snow which has accumulated upon them.

Appeal from St. Louis City Circuit Court.—*Hon. Jesse A. McDonald*, Judge.

REVERSED AND REMANDED.

*L. F. Parker, W. F. Evans* and *Jones, Jones, Hocker & Davis* for appellant.

(1) . The court erred in permitting the plaintiff to testify what his earnings had been during the spring season for the four years preceding his injury, for the reason that the conditions under which the plaintiff worked during said four years were entirely different

from those under which he worked at the time of his injury, he having, according to the testimony, been with the firm for which he had worked the last four years a continuous period of twenty-two years, and for the further reason that said earning, being upon a commission and not upon a salary basis, were uncertain and contingent, and for these reasons afforded no criterion as to the amount which he would have earned without his injury. Lewis v. Insurance Co., 61 Mo. 534; Beck v. West & Co., 87 Ala. 219; Iron Co. v. Topliff, 85 Wis. 525. (2) The court erred in giving to the jury plaintiff's first instruction. This instruction assumes that the presence of snow or ice upon the steps and platform made them unsafe for plaintiff's use, the very fact in dispute. Harlan v. Railroad, 65 Mo. 22; Powell v. Railroad, 76 Mo. 80; Stepp v. Railroad, 85 Mo. 229; Reisert v. Williams, 51 Mo. App. 13.

*Pearce & Davis* for respondent.

(1) Plaintiff, being a salesman on commission, evidence of his average earnings for the spring season of the four years next previous to his injury, was admissible. Otherwise: "There was no means whereby a jury could learn of the extent of an injured party's loss in this respect." Such probable losses may not be admissible in cases for breach of contract (as in the cases cited by the appellant) where the parties, by their agreement, may fix a means of showing damages, but such a rule has no application to personal injury cases. Paul v. Railroad, 82 Mo. App. 505; Griveaud v. Railroad, 33 Mo. App. 466; Pryor v. Railroad, 85 Mo. App. 372. (2) Plaintiff's prior earnings shown in evidence, were the result of his skill and services, and not of investment, and hence the evidence was within the rule of the Pryor case relied on by defendant. (3) That plaintiff fell by reason of the slippery sleet was a fact in the case, shown as well by the defendant's evidence as the plain-

tiff's, and no evidence introduced by either party tended to question this fact. It would not, therefore, be error even had the court assumed this fact in instructing the jury. Reno v. St. Joseph, 169 Mo. 658; McLean v. Kansas City, 100 Mo. App. 65. (4) Reading the instruction, together with defendant's instruction 5, the jury was required to find that the sleet, etc., on the car platform did not accumulate en route, but had accumulated before the car started on its journey. To send a car from its starting or a divisional point with platform and steps covered with sleet and ice is negligence. Gilman v. Railroad, 168 Mass. 454; Seymour v. Railroad, 3 Biss. 45; Vancleve v. Railroad, 107 Mo. App. 102; Railroad v. Cockerel, 17 Ky. 1037; Railroad v. Keegan, 210 Ill. 150. (5) The use of the word "contributed" in plaintiff's instruction 2 is not error. The court gave defendant's instructions 6 and 7, and these precluded the possibility of the jury believing that plaintiff could recover if both plaintiff and defendant were negligent. The instruction criticised, construed with those of defendant, permitted plaintiff to recover if defendant's fault, concurring with mere accident or contributing to conditions for which defendant was not responsible, caused plaintiff's injury. McQuade v. Railroad, 200 Mo. 150; Dechsner v. Railroad, 200 Mo. 333, 334; Brash v. St. Louis, 161 Mo. 433; Newcomb v. Railroad, 169 Mo. 422.

STATEMENT.—On February 4, 1905, at Arkansas City, in the State of Kansas, respondent took passage on one of appellant's passenger trains to be carried to Winfield, Kansas, a distance of about forty miles. The cars in the train were not of the vestibuled pattern and the steps and platforms were covered with ice, and were in this condition when the train reached Winfield, where respondent, in the act of getting off the train, slipped on the platform, fell and was injured. The action is to

128 App.—6

Haas v. Railroad.

recover for the injury. The answer is a general denial and a plea of contributory negligence.

Respondent's evidence tends to show that the weather at Arkansas City and Winfield, on February fourth, was clear and cold, the thermometer being below zero; that when he boarded the train the steps and platform of the car in which he traveled were covered with about three-fourths of an inch of snow and ice, frozen hard, which was rough and hard and showed imprints of human footsteps; that he had an umbrella and handbag, which he held in his left hand when he started to leave the car, and "grabbed" the railing of the car with his right hand as he stepped on the platform, and in stepping from the platform to the first step, his feet slipped from under him, broke his hold on the railing, and he fell out on the station platform. After falling he was taken to the Benton Hotel at Winfield and given attention. His shoe was cut off and his ankle found to be swollen. He was unable to walk and remained in Winfield about four days, during which time he received medical treatment, and was visited by a physician four times. After arriving in St. Louis, he received medical attention and was confined to the house about ten days, commencing February, 1905; used crutches about sixty days and thereafter used a cane about thirty days. Respondent's evidence also shows he was a salesman—a millinery drummer—and at the time of his injury was traveling in the employ of the Hanlon Millinery Company of St. Louis, Mo.; that his business when traveling was to solicit milliners to come to St. Louis and buy of his house and to sell goods; that the spring season for the sale of millinery begins in St. Louis about February twentieth and continues for six or eight weeks; that he did not travel any more during the spring season of 1905, but met milliners and merchants coming to the city, took them to the store and showed them around, and continued in this kind of em-

ployment until the end of April, 1905, that while with
the Hanlon Company he drew a salary of $125 per
month.

Dr. J. C. Lebrecht testified that he treated respond-
ent the first time on the nineteenth of February, 1905,
and saw him about twice a week for a month or six
weeks; that pain continued throughout treatment but
after the first two weeks respondent visited witness at
his office; that respondent suffered from a sprain or dis-
location, and his bill was fifty dollars.

Appellant's evidence tends to show the train on
which respondent was a passenger came from Vernon,
Texas, and changed crews at Enid, Oklahoma, and there
was no ice or snow on the steps or platform when the
train left Enid; that farther north there was "some
mist, falling weather, spitting snow," which froze as it
fell and covered the steps and platform with a thin sheet
of ice; that when the train arrived at Winfield, the
sidewalks and trees were covered with ice and sleet;
it was very cold and the steps and platform of the car
were also covered with ice and sleet, frozen hard, and
there were no ashes or cinders available to cover them.
The brakeman testified he got off at Winfield and as-
sisted passengers to alight from the car adjoining the
one respondent was in, and was helping some ladies
off when respondent fell; that respondent fell on the
first step and did not roll on the station platform. The
station agent at Winfield testified that on the fourth
of February it had been spitting snow in the afternoon,
and about seven o'clock it was sleeting and there was a
very thin, hard coating of ice on the station platform
which could not be removed, unless chopped off
with a hatchet, and was "just as slippery as glass."
Witness called upon respondent at the hotel and re-
spondent said he was coming down the coach steps when
he slipped on the step; that he had a grip in one hand
and an umbrella in the other; that respondent said he

told the brakeman if he had been there to take his grip from him, he probably would not have fallen; that respondent was not in bed at either time he saw him, was sitting in the hotel office in a chair.    Other witnesses testified as to the state of the weather at Winfield on the day respondent was hurt, and stated that a "mist and spitting snow" fell and was converted into ice, the weather being very cold.

C. W. Adams, vice-president of the Hanlon Millinery Company, testified respondent commenced working for the Company January 1, 1905, and was to be paid a salary of $1,200 per annum, plus five per cent commission on all sales over and above the amount necessary to make the stated salary; that he had to sell $25,000 worth of goods to make $1,200, his salary, which was payable monthly, $100 per month, though he drew from time to time what he needed; that but few customers came in and called for respondent and he was asked for his resignation about the tenth of March, 1905, but his injury had nothing to do with his discharge.

In rebuttal respondent offered reports of the United States Weather Bureau which tended to show that a snow prevailed throughout Kansas on February third, but that it was clear and cold on the fourth.

BLAND, P. J. (after stating the facts.)    1.    Respondent, over the objection of appellant, was permitted to show what his earnings had been during the spring seasons for four years previous to the year of his injury.    He had been in the same business these previous years, but was working for another firm engaged in the millinery business.    The admission of this evidence is assigned as error.

In Lewis v. Insurance Co., 61 Mo. 534, it was held that in a suit by an agent against an insurance company for his wrongful discharge, an estimate of his probable earnings after his discharge, derived from proof

of the amount of his collections and commissions before his discharge, without other proof relating thereto, is too speculative to be admissible.    In Paul v. Railroad, 82 Mo. App. l. c. 505, it was ruled that in a personal injury case the average earnings of the defendant, where he has no fixed salary, are proper to go to the jury on the extent of his loss.    Substantially the same ruling was made in Pryor v. Railroad, 85 Mo. App. 367.    See also Griveaud v. Railroad, 33 Mo. App. l. c. 466, where the same ruling was made.    These cases (cited by respondent) are not in point.    Respondent was employed at a fixed salary, to be increased to the extent of five per cent on all goods sold by him during the year in excess of $25,000.    Evidence of his loss of earnings, therefore, should have been confined to what, if anything, he lost of his salary on account of the injury.    Evidence of what he had made in previous years was inadmissible for this purpose.    Respondent's third instruction predicated on this erroneously admitted evidence should not have been given.

2.    Error is assigned in the giving of the following instruction for plaintiff, in that it assumes that the presence of snow and ice upon the steps and platform made them unsafe:

"1.    If you shall believe and find from the evidence that on or about the fourth day of February, 1905, the plaintiff boarded one of defendant's trains at Arkansas City in the State of Kansas, to take passage thereon to Winfield in said State, and paid his fare for said passage; and if you shall further believe and find from the evidence that when said train arrived at plaintiff's destination, the defendant or its agents and servants had negligently allowed the platform or steps of the car on which the plaintiff was a passenger to become covered with hard, uneven, lumpy and slippery sleet, snow or ice and that the condition of said platform or steps was known to the defendant, its agents or servants, or had

they exercised reasonable care under all the circumstances shown in evidence as defined in instruction No. 11, it would have been known to them, in a time sufficient, had they exercised such reasonable care under the circumstances, with the appliances at hand for the purpose to have removed said sleet, snow or ice or otherwise to have rendered said platform or steps safe for plaintiff's use; and if you shall further believe and find from the evidence that plaintiff, while in the exercise of reasonable care for his own safety, and while attempting to alight from said train and car, and while using said platform and steps, slipped and fell upon said platform and steps, and to the ground and was injured, then your verdict shall be for the plaintiff."

The dangerous condition of the steps was a fact in dispute. In effect, the jury were told that if they found from the evidence the steps and platform were covered "with hard, uneven, lumpy and slippery sleet, snow or ice," they were in a dangerous condition. The instruction would have been more accurate had it been left to the jury to find whether the steps were dangerous. But there is no dispute about the fact of the ice and sleet being on the steps and platform. That their icy, slippery condition made them dangerous to passengers getting on and off the train hardly admits of doubt, and appellant was not prejudiced by the instruction given in the form it was. [Reno v. City of St. Joseph, 169 Mo. l. c. 658, 70 S. W. 123; Moore v. Railroad, 100 Mo. App. 665, 75 S. W. 176.] The instruction is open to criticism in that it failed to direct the jury that the ice, etc., upon the steps and platform caused respondent to fall.

3. Error is assigned in the giving of the following instruction for respondent:

"You are instructed that as to providing the plaintiff with a safe place of egress from its car, it was the duty of the defendant to use the utmost degree of prac-

tical care, diligence and foresight, under all the circumstances to have the platform and steps of its car free of danger from hard, uneven, lumpy and slippery sleet, snow or ice and that the defendant is liable in this case if you find from the evidence that its agents or servants were guilty of negligence in that respect which directly contributed to cause plaintiff's injury."

The criticism made is that the effect of the instruction was to direct the jury that if both appellant and respondent were negligent, respondent was entitled to recover. Contributory negligence was pleaded and appellant's evidence tends to show that respondent attempted to alight from the car with a handbag in one hand and an umbrella in the other, and that the brakeman was at hand and would have assisted him had he asked it. This evidence tends to prove respondent was negligent. We think the instruction is erroneous in ignoring the defense of contributory negligence, and the error is not cured, as contended by appellant, by the giving of the following instruction for appellant:

"5. You are instructed that if you find and believe that the day was cold and that it was raining or sleeting while the train was en route and that the ice complained of accumulated en route, then it was not the duty of the employees of the railroad company to remove said ice after the train arrived at Winfield before permitting passengers to alight."

4. Error is also assigned in the refusal of the court to give the following instructions asked by appellant:

"5. The court instructs the jury that carriers of passengers are not insurers of the safety of passengers, and railroad companies engaged in carrying passengers are not liable for inevitable accidents, nor for every possible casualty resulting in injury to a passenger—they are only liable where such injury results from the negligence of the railroad company or its servants, and in cases of this kind, negligence is not presumed from

the proof of an accident and an injury, but the passenger is required to establish by a preponderance of the evidence that the injury resulted from the failure of the carrier to exercise due care in the premises.. And in this case, if you find and believe from the evidence that the day was cold and sleety, and that ice accumulated on the car steps en route, then you will not be authorized to find that the employees were negligent in not removing or attempting to remove said ice en route, nor were they required to do so after the train arrived at Winfield and before permitting passengers to alight.

4. You are instructed that railroad companies as common carriers of passengers are not insurers and are not required to keep up a continuous inspection of its appliances in route, and are not responsible for accidents resulting from agencies over which they have no control, such as storms, in route. Therefore, if you find and believe from the evidence that the ice or snow complained of fell in route and was due to the condition of the weather prevailing, then the railroad company can not be charged with negligence in failing to remove said ice or snow in route or at Winfield before permitting passengers to alight.

"9. You are instructed that the defendant was not negligent in running cars not provided with vestibuled platforms, and you will not consider that fact as an element of negligence in this case."

Refused instruction No. 5, we think goes too far in respect to releasing appellant from the duty to keep its platform and steps in a reasonably safe condition for passengers to get on and off its cars. Conditions may arise (the evidence tends to prove they were present on the day respondent was injured), when it would be the company's duty, en route, to remove ice, etc., from its steps for the safety of passengers in getting on and off its cars. [Weston v. New York Elevated Railway Company, 73 N. Y. 595.] Refused instruction No. 4, is open

to the same criticism. It seems to us that in such circumstances, the duty of the company should be measured by the danger of the situation, and if it is apparent to a reasonably prudent person that passengers cannot get on or off the cars, exercising reasonable care, without danger of falling, the steps and platform should be put in such condition as to enable them to do so, even though the train must be delayed for that purpose, for it is of more importance to the passenger that he arrive safely than that he arrive at his destination on scheduled time. The ninth instruction should have been given as a matter of caution to the jury not to infer negligence from the mere fact that the cars were not provided with vestibules.

The judgment is reversed and the cause remanded. All concur.